66553. EPPS v. THE STATE.

SHULMAN, Chief Judge.
This appeal is from appellant's conviction for homicide by vehicle. OCGA § 40-6-393 (a) (Code Ann. § 68A-903). After a collision in which a passenger in the other car was killed, appellant was found unconscious beside his car. When appellant remained unconscious after being transported to a hospital, the investigating police officer directed a lab technician to draw a blood specimen. When appellant awoke, he refused treatment and left after giving a statement in which he denied intoxication and culpability for the collision.

1. Epps contends that evidence of his blood alcohol level was inadmissible because the police officer who directed that a blood sample be taken did not give him the implied consent warnings required by OCGA §§ 40-5-55 (Code Ann. § 68B-306) and 40-6-392 (Code Ann. § 68A-902.1), and because the blood sample was not drawn in accordance with the requirements of OCGA § 45-16-46 (Code Ann. § 21-227). We disagree.

Appellant's argument with regard to the implied consent warnings is controlled adversely to him by *Rogers v. State,* 163 Ga. App. 641, 643 (295 SE2d 140): "If a suspect is 'dead, unconscious, or otherwise incapable of refusing the [intoxicant] test . . . the officer lawfully can extract a blood specimen under the aegis of protection of evidence' without advising the suspect of his rights concerning intoxicant tests. [Cits.]"

Nor is Epps' argument as to the failure to follow the procedures set forth in OCGA § 45-16-46 (Code Ann. § 21-227) valid. This section of the Georgia Post-mortem Examination Act as originally enacted (Ga. L. 1961, p. 437, § 2; Ga. L. 1974, p. 561, § 1) provided that a peace officer could notify a medical examiner for the purpose of obtaining a blood sample to test for the presence of intoxicating substances when a person had been admitted to a hospital or morgue as a result of any casualty and was unable to give his consent.

In *Wilson v. State,* 147 Ga. App. 560 (1) (249 SE2d 361), this court held in a situation factually similar to the instant case that failure to comply with the statutory direction that the blood sample

be obtained by a medical examiner or his designee destroyed the admissibility of the evidence of the results. The blood sample taken from Epps was not withdrawn by a medical examiner or his designee. The statute was amended on April 13, 1982, to allow "any licensed physician, registered nurse, or a medical or laboratory technician who draws blood from patients as part of his regular duties to withdraw blood for purposes of this Code section..." (Ga. L. 1982, pp. 959, 960). However, the amendment did not become effective until November 1, 1982, which was subsequent to the date the blood was withdrawn from Epps.

We nevertheless conclude that the procedure used here does not require reversal. OCGA § 40-5-55 (a) (Code Ann. § 68B-306) specifically states that "any person who operates a motor vehicle upon the highways of this state shall be deemed to have given consent, *subject to Code Section 40-6-392,* to a chemical test . . ." (Emphasis supplied.) OCGA § 40-6-392 (a) (2) (Code Ann. § 68A-902.1) recites that "[w]hen a person shall undergo a chemical test at the request of a law enforcement officer *under Code Section 40-5-55* (Code Ann. § 68B-306), only a physician, registered nurse, laboratory technician or other qualified person may withdraw blood for the purpose of determining the alcoholic content therein . . ." (Emphasis supplied.) Obviously, these statutes, adopted pursuant to the Uniform Rules of the Road, were intended to be applied conjunctively, and both (former Code Ann. §§ 68B-306 (a) and 68A-902.1 (a) (2)) were in effect at the time the blood sample was taken from Epps. OCGA § 45-16-46 (Code Ann. § 21-227), while incidentally encompassing a vehicular violation, is a much broader provision and is not cross-referenced under the Uniform Rules of the Road Act. We think it is apparent that the 1982 amendment to OCGA § 45-16-46 (Code Ann. § 21-227) was intended to bring these statutes into accord. Therefore, we do not consider *Wilson v. State,* supra, Division 1, to be controlling here and, while such a conflict is unlikely to arise again due to the 1982 amendment, we disapprove anything said therein which is contrary to the holding of this opinion.

2. Epps contends that it was error to allow the expert testimony of George Black, the Gwinnett County traffic engineer who investigated the scene of the collision, because a complete copy of his scientific report was not made available to defense counsel upon request pursuant to OCGA § 17-7-211 (Code Ann. § 27-1303) as required by *Tanner v. State,* 160 Ga. App. 266 (1) (287 SE2d 268). However, there is nothing in the record to show that "a proper and timely written demand" was made under OCGA § 17-7-211 (c) (Code Ann. § 27-1303), which is a prerequisite to compliance with this statute. Moreover, the state's certificate of discovery filed in

accordance with OCGA Ch. 17-7 (Code Ann. § 27-1302 et seq.) establishes that defense counsel was in fact served with the defendant's statement, the accident report, the accident reconstruction data and chart, and all written scientific reports upon which the testimony of this witness was based.

Epps' assertion that the trial court's order directing defense counsel to furnish the state with the written report of his expert pursuant to *Sabel v. State,* 248 Ga. 10, 18 (6) (282 SE2d 61), compounded the error is likewise untenable. When defense counsel refused to make this information available, filing a motion to reconsider the order, the state waived its demand and no mention of the defense's failure to comply was made before the jury.

3. Nor do we agree that the trial court abused its discretion in allowing George Black to remain in the courtroom after the rule of sequestration was invoked. This witness was the chief investigator of the state's case and his assistance was needed in its presentation. In order to present the case in an orderly manner and to lay the proper foundation for hypothetical questions to be posed to him, it was also necessary that this witness be excused from testifying first. It was within the trial court's discretion to allow these exceptions, and no harmful error has been shown. *Croom v. State,* 165 Ga. App. 676 (2) (302 SE2d 598).

4. Epps complains of the admission of opinion testimony of Officer Howard Beers, contending he was neither qualified as an expert nor tendered as one. Officer Beers was called by the state and testified that he had been a uniformed patrolman with the Gwinnett County Police Department for five years; had investigated in excess of 200 automobile wrecks; and had attended accident investigation courses conducted by the Georgia State Patrol, the University of North Florida and the Georgia Police Academy, where he was trained in advanced traffic management. Officer Beers was the primary investigator assigned to the Epps collision. Officer Davis was the first officer on the scene and assisted Officer Beers by going to the hospital and obtaining blood samples while Officer Beers and George Black, the traffic engineer, took photographs and measurements of the site.

"To qualify as an expert [see OCGA § 24-9-67 (Code Ann. § 38-1710)], generally all that is required is that a person must have been educated in a particular skill or profession; his special knowledge may be derived from experience as well as study. [Cits.] Formal education in the subject at hand is not a prerequisite for expert status. Whether one qualifies as an expert lies within the trial court's discretion. [Cits.] Appellant has shown no abuse of his discretion by the trial judge in permitting this witness to testify." *Bowden v. State,* 239 Ga. 821, 826 (3) (238 SE2d 905), cert. den. 435 U.

S. 937. See also *Jester v. State,* 250 Ga. 119 (1) (296 SE2d 555). "Even assuming that [Officer Beers'] testimony reconstructing the accident and the position of the vehicles was opinion evidence, or that his qualifications were weak, this 'could affect the credibility of his testimony but not its admissibility.' [Cits.]" *Bell v. Brewton,* 139 Ga. App. 463, 464-465 (228 SE2d 600). For the same reasons stated above, we find no error in the trial court's admission into evidence of a scaled diagram reconstructing the accident based on measurements taken by Beers and Black.

5. Nor do we agree that the trial court improperly refused voir dire of Officer Beers. It appears from the transcript that voir dire was not requested until this witness was testifying as to what certain photographs he had taken at the accident scene showed. Because the pictures had already been admitted, the court permitted Officer Beers to give his opinion, based on his observation at the scene, of how the collision occurred. The cross-examination which followed was curtailed only when defense counsel attempted to elicit hearsay testimony from Officer Beers as to an interview with another witness the day after the accident. The trial court correctly refused to allow that testimony. *Perez v. Malhenzie,* 165 Ga. App. 520 (1) (300 SE2d 226).

6. Epps argues that the trial court erred in allowing testimony of his statement to Officer Davis because he could not have knowingly and intelligently waived his right to remain silent due to the high degree of alcohol in his blood. Prior to being read the Miranda warnings, Epps had regained consciousness and had been informed of his need for x-rays, which he refused. Officer Beers testified that after he talked to the doctor he spoke with Epps, who complained of chest pains but "appeared to be conscious and alert and aware of his surroundings." When Epps asked to use the telephone, he also appeared alert and cognizant of his surroundings. Factual determinations of voluntariness made by the trial judge must be accepted by the appellate courts unless they are clearly erroneous, and we cannot say that the determination of the trial court here was clearly erroneous. *High v. State,* 233 Ga. 153 (1) (210 SE2d 673); *Franklin v. State,* 245 Ga. 141 (4) (263 SE2d 666).

7. Appellant's assertion, without citation of authority, that the trial court erroneously charged the jury on how they were to evaluate the testimony of experts is without merit. The instructions given were a correct statement of the law as set forth in the appellate decisions of this state. It is not the duty of the jury to make the threshold determination as to who is or is not an expert. Rather, "[i]t is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular art, science

or profession as to entitle him to be deemed prima facie an expert. [Cits.]" *Barrow v. State,* 235 Ga. 635, 639 (5) (221 SE2d 416). We find no grounds for reversal for any reason assigned.

*Judgment affirmed. McMurray, P. J., and Birdsong, J., concur.*

DECIDED NOVEMBER 18, 1983 —
REHEARING DENIED DECEMBER 1, 1983 — 

*John A. Nuckolls,* for appellant.
*W. Bryant Huff, District Attorney, Genevieve L. Frazier, Assistant District Attorney,* for appellee.