44643. BATY v. THE STATE.
(359 SE2d 655)

</div>

GREGORY, Justice.

The defendant, Willie Fred Baty, was convicted of murder, aggravated assault, armed robbery, burglary, and possession of a firearm during the commission of a crime. The state sought the death penalty for the murder charge, but the jury sentenced the defendant to life imprisonment. The trial court sentenced the defendant to a life sentence for the charge of armed robbery to be served consecutively to the life sentence for murder, and to total sentences of 29 years for the remaining offenses to be served consecutively to the life sentences.

The defendant was acquitted of a charge of rape, and the trial court directed a verdict of acquittal as to a charge of aggravated sodomy.[1]

In the early morning hours of June 2, 1985, the victim of the murder, Thomas Jackson, stopped at his place of business to "pick something up." His companion, Elaine Wilkerson, waited in the car for him. When he did not return within a few minutes, Wilkerson went into the trailer to look for him. There she saw Jackson struggling with the defendant who was holding a gun against Jackson's back. Jackson called to Wilkerson for help, yelling that "they" were going to kill him. The defendant then told Anthony Kilgore and Edward Jack Brent[2] to "grab" Wilkerson. Wilkerson immediately recognized Kilgore, having known him "all [her] life." A bag was placed over her head and she was taken to a separate room in the trailer. Wilkerson's ankles, wrists and throat were bound with coat hangers. She testified she heard Baty tell Jackson he was going to kill him, then heard two shots fired. The three men then came into the room where Wilkerson was being held and debated whether to kill or rape her. She testified that the coat hanger around her ankles was removed and she was simultaneously raped and sodomized by two of the men. Wilkerson stated that Baty told Kilgore to "waste" her. A pillow was placed over her face and two shots were fired into it. Both missed. The defendant then fired a shot into the pillow which struck Wilkerson in the jaw. The three men left the trailer taking $1500 with them. Sometime later Wilkerson was able to crawl to a neighboring home for aid.

After Kilgore learned that Wilkerson had identified him as one of her assailants, he turned himself in to the police. Kilgore identified Brent as another assailant, but as he had only met Baty the day before, he did not know Baty's name. Following his arrest Brent identified Baty who was subsequently apprehended in California. Both Kilgore and Brent testified at trial that Baty had killed Thomas Jackson and shot Elaine Wilkerson.

A microanalyst from the State Crime Lab testified that a footprint found on the back of Thomas Jackson's shirt matched the tread pattern of one of the shoes found in Baty's luggage. A firearms expert

---

[1] The crimes were committed on June 2, 1985. Baty was indicted on July 18, 1985 while at large. He was arrested in California on November 25, 1985. His trial began on June 3, 1986, and the jury returned its verdict on June 13, 1986. The jury sentenced Baty to life imprisonment for the murder charge, and the trial court imposed sentences as to the remaining charges on July 13, 1986. A motion for new trial was filed on July 9, 1986 and denied on March 2, 1987. The case was docketed in this court on May 6, 1987, and submitted to us on briefs on June 19, 1987.

[2] Both Kilgore and Brent entered pleas of guilty to charges of felony murder and armed robbery. The trial court sentenced both men to life imprisonment on the felony murder charges. Sentencing had not been imposed on the armed robbery charges at the time of Baty's trial.

from the State Crime Lab testified that three of the bullets found at the scene of the crime could have been fired from guns in Baty's possession at the time of his arrest in California.

1. While not raised by Baty, we hold that the evidence presented at trial would authorize a rational trier of fact to find him guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Following their arrests, Kilgore and Brent made statements to police which were recorded on videotape. Prior to trial the state provided these videotapes to the defendant who had transcripts prepared from the tapes. At trial Baty sought to impeach the testimony of Kilgore and Brent by use of the videotapes. The trial court ruled that Baty could not use the videotapes to impeach these witnesses unless he first offered the tapes in evidence. Baty did not offer the tapes in evidence, but instead used the transcripts of the tapes to impeach Kilgore and Brent.

On appeal Baty argues that the trial court erred in not permitting him to use the videotapes for impeachment without first offering them in evidence. Baty points out that had he offered the tapes in evidence, he would have lost the right to opening and concluding closing arguments under OCGA § 17-8-71. We find it unnecessary to determine whether one must offer videotapes in evidence in order to use them solely for the purpose of impeachment as we find it highly probable that any error in this regard did not contribute to the verdict. *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976). Baty was able to effectively use the transcripts of the tapes to impeach Kilgore and Brent. In view of the overwhelming evidence of Baty's guilt, we conclude that any error resulting from Baty's inability to use the videotapes without first admitting them in evidence, in addition to using the transcripts of the tapes to impeach these witnesses, is harmless.

3. A police identification technician made rough sketches of the crime scene during investigation of the murder. Shortly thereafter this technician was sent to the Police Academy, and took the rough sketches with him. One day prior to trial the technician prepared a "final" drawing from the sketches, which was immediately given to Baty. Baty moved for a mistrial on the ground that the final sketch should have been both prepared and delivered to him more promptly pursuant to his motion under *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). The trial court denied the motion for mistrial, but ruled that it would reconsider the issue if Baty could show that he had been deprived of "anything arguably exculpatory," or that "there has been some prejudice against the defendant." No such showing was made.

*Brady* prohibits the prosecution from suppressing evidence favorable to an accused where the evidence is material either to guilt

or punishment. The evidence in this case was not suppressed. Further, Baty has not shown that the final sketch was in any way exculpatory. We hold that the trial court did not abuse its discretion in denying the defendant's motion for mistrial.

4. The defendant also argues that the trial court erred in denying his motion to dismiss the indictment due to the state's "failure" to prevent Thomas Jackson's son from selling the trailer in which the murder took place. The sale took place prior to trial and, according to Baty, before his counsel had the opportunity to examine the trailer. Baty maintains "the state's inaction was tantamount to suppressing evidence," as the trailer was "obviously critical exculpatory evidence." The defendant takes the position that he may have been able to more effectively cross-examine Kilgore and Brent about events surrounding the murder had the police "preserved" the trailer.

It is undisputed that the defendant had access to numerous crime scene photographs taken by the police. He has made no showing either that exculpatory evidence has been suppressed under *Brady v. Maryland*, supra, or that the police were under a duty to prevent the victim's son from disposing of the trailer. Under these circumstances we find no error.

5. Contrary to Baty's assertions, it was not error for the trial court to refuse to require the state to elect between prosecuting him for malice murder or felony murder. *Dunn v. State*, 251 Ga. 731 (5) (309 SE2d 370) (1983). Baty argues that because both crimes were alleged in the indictment, the jury may have believed that he was indicted for multiple counts of murder. We do not agree. The trial court's charge to the jury made clear the fact that while the state was seeking a murder conviction under alternate theories of malice murder and felony murder, the defendant could be convicted of only one count of murder.

6. After Wilkerson's release from the hospital the police showed her a photographic display to determine whether she could identify the man she had seen struggling with Thomas Jackson on the night of the murder. She selected Baty's photograph, telling the officer she was "75% sure he was the man."

Baty argues that Wilkerson's in-court identification of him should have been suppressed because the photographic display was inherently suggestive. We need not decide whether the identification procedure was impermissibly suggestive, because we find that Wilkerson's in-court identification was based on her opportunity to observe Baty at the time of the murder, rather than on the photographic display.

Wilkerson testified she was able to observe Baty for "three or four minutes" before her head was covered. She testified she had a good view of Baty's profile in a well-lighted area. Wilkerson was posi-

tive in her in-court identification of Baty as the man she saw on the night of the murder.

"As the basis for the courtroom identification was independent of the allegedly suggestive confrontation procedure, it was not error for the trial court to deny the motion to suppress. *Baxter v. State,* 254 Ga. 538 (11) (331 SE2d 561) (1985). Considering [Wilkerson's] opportunities to observe the defendant prior to the shooting, there was little likelihood of misidentification of the defendant at the time of [Wilkerson's] in-court identification. *Neil v. Biggers,* 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972)." *Callaway v. State,* 257 Ga. 12 (3) (354 SE2d 118) (1987).

7. Baty argues that photographs taken of the murder victim at the scene of the crime should not have been admitted because they were unfairly prejudicial and irrelevant as the cause of death was not in dispute.

Pre-autopsy photographs which demonstrate the location and nature of the wounds are relevant to the issue of death and may be introduced in evidence even though the photographs are duplicative of expert testimony relating to the cause of death. *Leggett v. State,* 256 Ga. 274 (3) (347 SE2d 580) (1986); *Arthur v. State,* 256 Ga. 738 (353 SE2d 331) (1987).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 9, 1987.

*Lawson, Davidson & Fuller, Thomas P. Lenzer,* for appellant.
*Robert E. Wilson, District Attorney, Elisabeth G. MacNamara, Assistant District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Assistant Attorney General,* for appellee.

