S93A1615. ISAAC v. THE STATE.
(440 SE2d 175)

CLARKE, Chief Justice.

A month before her third birthday, Tiara Gray died of blunt force injuries to her head and abdomen.[1] The victim's mother, Tina Gray, met appellant in late 1990 while both were stationed with the United States Army in Saudi Arabia. Appellant and Ms. Gray returned home in March 1991 and moved in together at the Hidden Glen Trailer Park in Hinesville, Georgia. They drove to New York together where they picked up Ms. Gray's two children, Tiara and Diante. On the morning of July 16, 1991, Ms. Gray left Tiara at the day-care center. Her daughter did not have any injuries at the time, except a scrape on her face from an earlier incident. Appellant picked up the victim at around 5:30 p.m. When appellant and the two children picked up Ms. Gray, Tiara said that she was sleepy but was not hurt; upon arriving at home, Ms. Gray checked her daughter's body for injuries, finding none. She left her children with appellant and went to a nearby grocery store. When she returned, she noticed a foul odor in the house. She checked on Tiara, who had defecated on herself. The victim was cold to the touch and was not breathing. Ms. Gray drove the girl to the hospital while appellant tried to revive the victim. At the hospital, physicians took the victim into the emergency room. When all efforts to revive the girl failed, they declared her dead at 7:45 p.m.

At trial, the state presented expert testimony showing that the victim died of a combination of blunt force injuries to her abdomen

---

[1] The homicide occurred on July 16, 1991. On September 17, 1991, Henry Isaac was indicted in Liberty County for murder. Appellant was convicted of felony murder on November 14, 1991, and sentenced to life imprisonment. On December 13, 1991, appellant filed a motion for new trial, which was denied on July 12, 1993. Appellant filed his notice of appeal on July 12, 1993. The case was submitted for decision without oral argument on October 10, 1993.

and to her head. The autopsy revealed that her liver had been torn all the way through in two places; that her pancreas had also been torn; that she lost about fifteen percent of her total blood volume; and that her brain had begun to swell from a blunt force trauma, causing her to go into cardiac arrest. The state proffered the testimony of two expert witnesses: Dr. Steve Dunton, the medical examiner who performed the autopsy, and Dr. Halbert Fillinger, an expert in forensic pathology specializing in child death and child abuse.

Both experts opined that the victim had been beaten and that the injuries were consistent in size, shape, and position with having been inflicted by adult hands. They also opined that the victim died within 15 minutes of receiving the fatal injuries.

1. After reviewing the evidence in the light most favorable to the jury's verdict of guilty, we conclude that a rational trier of fact could have found the defendant guilty of felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The trial court did not err in denying appellant's motion for a directed verdict.

2. In his first enumeration of error, appellant contends that the trial court erred in failing to grant appellant's motion for continuance, filed on October 7, 1991. On November 6, 1991, the trial court heard arguments on appellant's pretrial motions; however, appellant did not argue his motion for continuance.

All applications for continuances are addressed to the sound legal discretion of the court and, if not expressly provided for, shall be granted or refused as the ends of justice may require. OCGA § 17-8-22. In the absence of an abuse of discretion, this court will not interfere with the trial court's decision. *O'Neal v. State*, 254 Ga. 1 (2) (325 SE2d 759) (1985). Appellant has failed to show any evidence that the trial court abused its discretion.

3. Appellant complains that the trial court erred in admitting into evidence over his objection several pre-autopsy photographs of the victim. He argues that these photographs were unnecessarily inflammatory and prejudicial. Contrary to appellant's contention on appeal, pre-autopsy photographs that demonstrate the location and nature of the wounds are relevant to the issue of death and may be introduced in evidence even though the photographs are duplicative of expert testimony relating to the cause of death. *Baty v. State*, 257 Ga. 371, 375 (7) (359 SE2d 655) (1987); *Watson v. State*, 206 Ga. App. 95 (424 SE2d 360) (1992). Appellant makes no showing that the trial court abused its discretion in admitting the photographs. *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1983), cited by appellant, is inapposite to the issue. That case dealt with autopsy photographs where the body had been disfigured by the medical examiner. The photographs in the present case had no such defect.

4. On appeal, appellant contends that the district attorney made several objectionable statements amounting to reversible error.

(a) Appellant argues that the district attorney improperly stated his own opinion as to the guilt of the accused.[2] However, appellant failed to object to any of these comments during or after closing arguments. The failure to object to improper closing arguments precludes review of the remarks on appeal. *Conner v. State*, 251 Ga. 113 (6) (303 SE2d 266), cert. denied 464 U. S. 865 (1983). The defendant must object to improper argument when the impropriety occurs at trial, allowing the judge to take remedial action. *Todd v. State*, 261 Ga. 766 (2) (a) (410 SE2d 725) (1991), cert. denied 61 USLW 3258 (1992).

(b) Appellant also contends that the trial court erred in overruling his objection to the prosecution's improper references to the defendant's failure to call certain witnesses.[3] While the State may not comment upon a defendant's failure to testify, a prosecutor may draw inferences in his argument from the nonproduction of witnesses. *McGee v. State*, 260 Ga. 178 (4) (b) (391 SE2d 400) (1990).

5. Appellant enumerates as error the trial court's failure to charge the jury on the issue of voluntary manslaughter. Appellant contends that Dr. Dunton testified that the type of attack suggested an "unbridled anger, an attack that is completely out of control." However, appellant made neither written nor oral request for a charge on voluntary manslaughter. As a result, he cannot be heard to complain on appeal. *Mosley v. State*, 257 Ga. 382 (359 SE2d 653) (1987).

Furthermore, as noted by the State, it is nearly impossible to conceive of a situation in which a two-year-old child could provoke a reasonable person to kill, requiring a charge on voluntary manslaughter. As this court has noted:

It is a mistake to suppose that if one kill another in the heat

---

[2] The prosecutor made reference to the reasons for the delay in arresting Isaac:
He says we've got a weak case because . . . we did not arrest him immediately after the autopsy or immediately after the child died.
. . .
I have a responsibility, just as much a responsibility to prosecute those that I firmly believe are guilty as to not prosecute those that I have a question about or that the evidence leaves, in my mind, a question about. . . . If I'm going to take that case to the grand jury, I want to be sure that we've got the right person.

[3] Appellant called several character witnesses to the stand to testify concerning his character. The prosecutor referred to these witnesses in his closing argument, suggesting that these were Isaac's friends who testified to help him. The district attorney argued:
First of all he puts up character witnesses. . . . They're his friends and his buddies. Not a single one of those people knows anything about what happened in this case. . . . They're his friends. You've got friends. I've got friends. . . . What's important about the character witnesses is who didn't show up. Where is his unit commander? Where is his first sergeant? Where is the chaplain? They aren't here.

of passion, that such killing cannot be murder. Every man is responsible to the community for the control of his temper, and if for some small provocation he permits himself to get into a fury and kills a human being, it is murder. There must be provocation such as justifies the excitement of passion.

*Smith v. State*, 49 Ga. 482, 485 (1873). The sudden, violent, and irresistible passion required in voluntary manslaughter must be of the nature that would result from serious provocation sufficient to excite such passion in a reasonable person. OCGA § 16-5-2 (a). There is no evidence of such provocation in the record. A charge on voluntary manslaughter was not required.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 28, 1994.

*Lloyd D. Murray*, for appellant.

*Dupont K. Cheney, District Attorney, J. Stephen Archer, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Matthew P. Stone, Staff Attorney*, for appellee.