A95A2352. WRIGHT v. THE STATE.
(469 SE2d 381)

RUFFIN, Judge.
    Bennett Wright was convicted of theft by receiving stolen property. He appeals the court's judgment of conviction and the denial of his motion for new trial. For reasons which follow, we affirm.
    Viewed in a light to support the verdict, the evidence at trial showed that a refrigerator and stove were stolen from a mobile home owned by Ranch Park Mobile Homes. The police eventually found the refrigerator and stove at the home of Wayne Nutt. Nutt told a police officer that he met Wright at the home of a friend, Charles Black, who was Wright's neighbor, and that Wright asked him if he wanted to buy a refrigerator. Nutt testified that he agreed to buy the refrigerator, valued at $1,200, for $350, and that he knew it was stolen. Black testified that although he did not hear the conversation between Wright and Nutt, Nutt told him he was going to buy a refrigerator from Wright. Late one evening approximately two weeks later, Wright and two other men appeared at Black's house in a truck containing a refrigerator and stove. Wright asked Black to contact Nutt, which he did. Because Wright was having difficulty finding Nutt's house, and Black knew where he lived, Black accompanied the men to deliver the refrigerator.
    1. In four enumerations of error, Wright challenges the sufficiency of the evidence. "A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. 'Receiving' means acquiring possession or control . . . of the property." OCGA § 16-8-7 (a).
    Although Wright argues there was no evidence that he bought or received the goods, "the actus reus element of the offense may be committed by either receiving, disposing of, or retaining stolen property. [Cit.]" *Camsler v. State*, 211 Ga. App. 826, 827 (440 SE2d 681) (1994). Furthermore, contrary to Wright's contention that there is no evidence as to who stole the goods, stealing is not an element of the offense and " 'proof of from whom a stolen article was received is [also] not an essential element of the crime. . . .' [Cit.]" *Thomas v. State*, 218 Ga. App. 371, 372-373 (1) (461 SE2d 305) (1995).
    Finally, although Wright argues that some of the testimony against him came from admitted "liars," "[o]n appeal the evidence

must be viewed in the light most favorable to support the verdict, and [Wright] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. [Cit.]" *Thomas*, supra. We find there was ample evidence from which any rational trier of fact could have found Wright guilty of the offense of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Thomas*, supra at 374. Accordingly, the trial court did not err in denying Wright's motion for a directed verdict or his motion for new trial on this ground.

2. Wright asserts the trial court erred by admitting, over objection, a witness's testimony that he observed blood at the scene of the break-in. The transcript shows that as the witness was describing the damage to the mobile home, he stated that "there was blood on the front door." After Wright objected that the witness was not an expert competent to testify that the substance on the door was blood, the judge allowed the witness to state what he thought he saw. The witness then explained that based on occasions when he had seen himself bleed, he concluded that the substance on the door appeared to be blood. Inasmuch as the witness explained the basis for his opinion that the substance was blood, the trial court did not err in admitting the testimony. See OCGA § 24-9-65; *Wortham v. State*, 158 Ga. App. 19 (279 SE2d 287) (1981).

3. In two enumerations of error, Wright asserts that the trial court erred in allowing a police officer to testify that there was nothing in a fingerprint report that led him to make an immediate arrest. Wright apparently believed the information in the fingerprint report was exculpatory and objected because a copy of the report was not furnished to him in response to his pretrial motion under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). On appeal, Wright argues that the report "was exculpatory evidence which could have assisted in the preparation of the defense."

"Generally the complaint under Brady arises where the defendant discovers *after* trial that exculpatory information, known to the prosecution but unknown to the defendant, existed prior to or arose during the trial. [Cit.] Here, [Wright] made a Brady motion prior to trial, then complained he was surprised by the [reference to] this allegedly exculpatory [report] during the trial. The '(d)efendant . . . has the burden of showing that the evidence withheld from him so impaired his defense that he was denied a fair trial within the meaning of the Brady Rule.' [Cit.] Here, the exculpatory information was not withheld from the jury. The complaint is that it was not furnished in response to a discovery request [and apparently that the trial court did not exclude the exculpatory information]. How has the failure to furnish [Wright] the evidence in advance of trial [or the

failure to exclude reference to the allegedly exculpatory evidence] impaired his defense? It has not been shown. If it is [Wright's] contention that additional time for investigation would have enhanced his defense, the proper motion would have been for an adequate recess. . . ." (Emphasis in original.) *Wallin v. State*, 248 Ga. 29, 33 (6) (279 SE2d 687) (1981). Furthermore, " '[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial . . .' " is insufficient to meet the burden. *Boyce v. State*, 184 Ga. App. 578, 582 (14) (362 SE2d 229) (1987). See also *Gresham v. State*, 265 Ga. 730 (1) (462 SE2d 370) (1995). Accordingly, we find no error.

4. Wright asserts that the trial court erred by allowing the prosecutor, over objection, to ask a leading question on direct examination. Under OCGA § 24-9-63, the court may exercise discretion in allowing a party to ask its own witnesses leading questions. " 'It would be a rare case in which the trial court's exercise of discretion on this issue would warrant reversal.' [Cit.]" *Billings v. State*, 212 Ga. App. 125, 129 (5) (441 SE2d 262) (1994). After reviewing that portion of the transcript in which the question was asked, we find no such abuse of discretion.

5. Finally, Wright asserts that the trial court erred in sustaining the State's objection to his question of a State's witness concerning whether the witness had committed perjury on a previous occasion. The State objected on the ground that the question called for a legal conclusion. After the trial judge sustained the objection and permitted Wright to ask the question in a different way, Wright's attorney responded that he would withdraw that question. " '[A] litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further.' [Cits.] Accordingly, we find nothing for us to review based on the posture of the trial record regarding this particular enumeration of error." *Smith v. State*, 192 Ga. App. 768, 771 (2) (386 SE2d 530) (1989).

*Judgment affirmed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 19, 1996.

*David E. Morgan III*, for appellant.
*John C. Pridgen, District Attorney*, for appellee.