## S97A0691. PHILPOT v. THE STATE.
(486 SE2d 158)

HUNSTEIN, Justice.

James Philpot was convicted of the handgun murders of Bobby Grimes and Adrian Chester, the aggravated assaults of Kenneth Grimes, Antonio Dallas, and Steven Word, and two counts of possession of a firearm by a convicted felon.[1] The jury fixed his sentence at

---

[1] The crimes occurred on March 12, 1995. Philpot was indicted on May 19, 1995 in DeKalb County and charged with two counts of murder, four counts of felony murder, three counts of aggravated assault, and two counts of possession of a firearm by a convicted felon. The State sought the death penalty. He was first tried on all counts except the one count of possession of a firearm by a convicted felon based on the firearm discovered at his residence, which was tried separately. The jury found Philpot guilty on all of the counts and fixed his sentence at life without parole, finding that two aggravating circumstances existed for the murder of Adrian Chester, OCGA § 17-10-30 (b) (1) and (3), and that one aggravating circumstance existed for the murder of Bobby Grimes. Id. at (b) (3). The trial court on September 25, 1996 sentenced Philpot to life without parole as to Grimes' murder (Count 1), to life

life without parole. He appeals from the judgment and sentence entered thereon.

1. The evidence adduced at trial authorized the jury to find that Philpot and a friend, Grant Walton, went to a nightclub in DeKalb County shortly before closing time on March 12, 1995. An argument with club personnel over the cover charge escalated into a fight, during which Philpot was struck in the eye. Philpot and Walton left the scene but Philpot returned with a 10 mm pistol he had left in Walton's car. Walton also returned and confronted Bobby Grimes, a club security guard, but left the scene when Grimes displayed a firearm. After Grimes put away his gun, Philpot ran up to him from an angle where Grimes could not see him and shot Grimes five times at close range. Philpot used a type of bullet not designed to stop inside the target; all five bullets Philpot shot into Grimes exited his body. The jury was authorized to find that Grimes was standing at or inside the door of the nightclub, in which there were several hundred people. As Grimes fell, Philpot began firing into the crowded club. Adrian Chester, a club employee, was shot and killed. Two men inside the club, Kenneth Grimes and Steven Word, a club employee and patron, respectively, were wounded; Antonio Dallas, an unarmed club employee outside the club, was also wounded. Philpot rejoined Walton, telling him to go because "I just shot them," later explaining the shooting by stating "don't nobody hit me in my eye." Walton subsequently contacted police about the shooting. A police search of Philpot's residence revealed two .25 semi-automatic weapons and a 10 mm gun, which expert testimony established fired the bullets found at the murder scene. Philpot, whose prior felony conviction for burglary was adduced at trial, testified that he started shooting when a club bouncer (Bobby Grimes) turned to him with a gun.

From this evidence, a rational trier of fact could have found Philpot guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The evidence was also sufficient to enable the jury to find beyond a reasonable doubt as to the murder of Bobby Grimes that Philpot knowingly created a great risk of death to more than one person in a public place which would normally be hazardous to the lives of more than one person. OCGA § 17-10-30 (b) (3); see *Chenault v. State*, 234 Ga. 216, 225-226 (215 SE2d 223) (1975).

2. In his first three enumerations of error, Philpot contends he

without parole for Chester's murder, to run consecutive to Count 1, and consecutive sentences of twenty years for each aggravated assault conviction and five years for each possession of a firearm conviction. Philpot's notice of appeal was filed on October 24, 1996. The appeal was docketed in this Court on January 28, 1997 and was orally argued on April 21, 1997.

was denied due process by the trial court's refusal to admit evidence and give jury charges regarding appellant's parole eligibility. Because the jury was instructed as to the provisions of OCGA § 17-10-31.1 (d),[2] they were informed about the meaning of and differences between life with parole and life without parole and Philpot's parole eligibility under these two alternatives. See *McClain v. State*, 267 Ga. 378 (5) (477 SE2d 814) (1996) (trial court may charge jury on life without parole). Philpot, however, argues that the charge was not adequate and that he was entitled to admit evidence and have the jury additionally charged about the specified minimum time he would be required by statute to serve before he could become eligible for parole.

All the Justices of this Court concurred with the ruling in *Henry v. State*, 265 Ga. 732 (462 SE2d 737) (1995), a case in which the defendant was sentenced to life without parole, that

> [i]t was not error for the trial court to refuse to instruct the jury, as requested by Henry, that consecutive life sentences require that a defendant serve a specified minimum of time for each consecutive count. In this state, the jury does not determine the manner in which life sentences are served. [Cits.]

Id. at 741 (10) (b). Notwithstanding our holding in *Henry*, supra, Philpot argues that a jury charge regarding the statutory minimum length of incarceration facing the defendant if he is sentenced to life with parole is required by the holding in *Simmons v. South Carolina*, 512 U. S. 154 (114 SC 2187, 129 LE2d 133) (1994). However, as we stated in *Burgess v. State*, 264 Ga. 777, 788 (33) (450 SE2d 680) (1994), the U. S. Supreme Court's opinion in *Simmons* stands only for the relatively narrow proposition that

> where the State makes an issue of the defendant's future dangerousness during the sentencing phase of a capital trial and state law *prohibits* the defendant's release on parole, the jury must be informed that the defendant is ineligible for parole.

---

[2] The trial court charged the jury:

Now, under our law, "life imprisonment" means that the defendant will be sentenced to incarceration for the remainder of his natural life. However, he will be eligible for parole during that term of sentence.

. . .

Under our law, "life imprisonment without parole" means that the defendant shall be incarcerated for the remainder of his natural life and shall not be eligible for parole.

Thus, *Simmons* is not applicable to this case. Furthermore, this Court having already concluded that it is not error for the trial court to keep from the jury truthful information regarding mandatory minimum periods of imprisonment before a defendant is eligible for parole,[3] *Henry v. State*, supra, 265 Ga. at (10) (b), we decline Philpot's invitation to expand the holding in *Simmons* so as to require reversal of the trial court's rulings on evidence and jury instructions regarding the specifics of Philpot's parole eligibility.

3. In its instructions in the sentencing phase of the trial, the court charged the jury on the statutory aggravating circumstance set forth in OCGA § 17-10-30 (b) (3), using language which tracked the statute.[4] We disagree with Philpot that the trial court's charge was inadequate because it did not define for the jury the terms "knowingly" and "great risk." These words are not in any sense

> technical or words of art, the meaning of which would not be understood by people of ordinary experience and understanding. On the contrary, the terms used are ordinary terms found in common usage and understood by people of common and ordinary experience. *Sproles v. Binford*, 286 U. S. 374 (52 SC 581, 76 LE 1167) [(1932)].

*Wallace v. State*, 224 Ga. 255, 256 (1) (b) (161 SE2d 288) (1968). Terms of common usage and meaning need not be specifically defined in the charge to a jury. *Smith v. State*, 249 Ga. 228 (2) (290 SE2d 43) (1982); *Anderson v. State*, 226 Ga. 35 (2) (172 SE2d 424) (1970). We find no merit in Philpot's argument that the trial court's charge on OCGA § 17-10-30 (b) (3) failed under *Godfrey v. Georgia*, 446 U. S. 420 (100 SC 1759, 64 LE2d 398) (1980) to set forth clear and objective standards that provide the specific and detailed guidance required of penalty phase instructions.

*Judgment affirmed. All the Justices concur.*

---

[3] The United States Supreme Court held that

[i]n a State in which parole is available, how the jury's knowledge of parole availability will affect the decision whether or not to impose the death penalty is speculative, and we shall not lightly second-guess a decision whether or not to inform a jury of information regarding parole. States reasonably may conclude that truthful information regarding the availability of commutation, pardon, and the like, should be kept from the jury in order to provide "greater protection in [the States'] criminal justice system than the Federal Constitution requires." [Cit.]

*Simmons v. South Carolina*, supra, 114 SC at 2196.

[4] The trial court charged the jury that

the following may constitute statutory aggravating circumstances: ... where the defendant, by the act of murder, knowingly created a great risk ... of death, to more than one person in a public place, by means of a weapon or device which would normally be hazardous to the lives of more than one person.

CARLEY, Justice, concurring.

I fully join in the majority's opinion affirming the judgments of conviction entered on the jury's guilty verdicts. In Division 1, the majority disposes of Philpot's enumeration of error regarding the sufficiency of the evidence of the aggravating circumstance set forth in OCGA § 17-10-30 (b) (3) as to the murder of Bobby Grimes, and I fully agree with this disposition. However, I write separately to note that, although not specifically enumerated as error, the evidence was also sufficient to enable the jury to find beyond a reasonable doubt the existence of the aggravating circumstances set forth in both subsections (b) (1) and (b) (3) of OCGA § 17-10-30 as to the murder of Adrian Chester.

DECIDED JUNE 30, 1997.

*John O. Ellis, Jr., Claudia S. Saari,* for appellant.

*J. Thomas Morgan III, District Attorney, Desiree S. Peagler, Barbara B. Conroy, Robert E. Statham III, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.