## S97A1279. McCANNON v. THE STATE.
(489 SE2d 801)

THOMPSON, Justice.

Franklin Joseph McCannon, Jr. was convicted by a jury of the malice murder of Jesse Thomas "Jay" Black.[1] The State's evidence showed that the day before the murder, Black held a loaded gun to McCannon's head in the parking lot of the wood processing plant where they were both employed. After this incident but prior to the murder, McCannon's co-workers heard him make threats against Black. On the day of the murder, McCannon asked a friend to take him to Wal-Mart so that he could buy bullets. As the friend was driving, McCannon fired four shots from the murder weapon at a road sign.

During the evening hours of that same day, McCannon passed Black on Black's usual route to work and signaled for Black to pull over beside some dumpsters. McCannon got out of his car and approached Black's truck. Black was sitting in the driver's seat. McCannon shot Black four times in the left side of his head from a

---

[1] The crime occurred on December 30, 1993. McCannon was indicted on March 7, 1995. Trial began on October 30, 1995, and he was convicted and sentenced to life imprisonment on November 2, 1995. He filed a motion for new trial on December 1, 1995, and amended the motion on September 23, 1996. The motion was denied on February 27, 1997. McCannon filed a notice of appeal on March 24, 1997. The case was docketed in this Court on April 30, 1997, and submitted for decision on briefs on June 23, 1997.

range of six to ten inches. Three of the four shots were fired from inside Black's vehicle.

The murder weapon was recovered from a co-worker's vehicle where McCannon had hidden it when he arrived at work after the murder. The gun contained three live bullets, establishing that McCannon had reloaded the weapon sometime after firing at the road sign and before seeking out Black; he had eight bullets in his pants pocket when he was apprehended. McCannon also told the co-worker in whose car he hid the murder weapon that he had "shot Jay," referring to the victim, and told another co-worker that night that he had killed Jay Black.

When questioned by authorities, McCannon told several different stories, finally admitting, "I know what I did was wrong. It was wrong." In one version, McCannon said he thought Black was reaching for a gun and so he shot in self-defense. A loaded pistol was found in its usual place in Black's unopened glove compartment, with no round in the chamber.

1. The evidence was sufficient to enable a rational trier of fact to find McCannon guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

2. Crime scene photographs of the victim's body were introduced through an investigating officer and were admitted without objection. McCannon thereafter objected to the investigator's description of what the photographs depicted, stating his objection as follows: "It shows whatever the jury says it shows." The trial court allowed the testimony, issuing an instruction to the jury as follows: "You are to go by what the pictures actually show when you look at them." We find no error in allowing the testimony. See *Pruitt v. State*, 258 Ga. 583, 586 (5) (373 SE2d 192) (1988) (court did not err in asking the expert to explain to the court what photographs would illustrate for the jury and in basing its decision to admit in part on the expert's answer). See also *Epps v. State*, 169 Ga. App. 157, 160 (5) (312 SE2d 146) (1983) (because accident scene photographs already admitted, court allowed expert to testify as to what the photographs depicted).

We will not consider whether the photographs were improperly admitted, or whether the investigator's use of the word "trauma" expressed an improper medical conclusion, since neither claim of error was objected to below. See *Sterling v. State*, 267 Ga. 209 (477 SE2d 807) (1996); *Isaac v. State*, 263 Ga. 872, 874 (4) (a) (440 SE2d 175) (1994); *Mundy v. State*, 259 Ga. 634, 635 (5) (385 SE2d 666) (1989).

3. During voir dire, juror Youngblood acknowledged that she had read in a newspaper account of the crime that the victim had been shot four times. She characterized such conduct as cruelty. McCan-

non's attorney asked juror Youngblood if the evidence were to show that four shots had been fired, would she require the defense to "overcome" any opinion she may have formed from reading the newspaper. The trial court sustained an objection by the State on the ground that this called for the prospective juror to prejudge the case. A trial court does not abuse its broad discretion in limiting questions to those that do not require the juror to prejudge the case. *McGinnis v. State*, 258 Ga. 673, 674-675 (3) (372 SE2d 804) (1988). See also *Waldrip v. State*, 267 Ga. 739, 742 (2) (482 SE2d 299) (1997). Under the circumstances, the trial court did not impermissibly limit the scope of voir dire.

4. The trial court also denied McCannon's motion to have juror Youngblood disqualified for cause. The trial court specifically asked the prospective juror if she could put everything out of her mind and judge the case based only on the facts she heard in the courtroom and the law she was given in the charge, to which juror Youngblood replied, "Oh, yes. Yes." A juror must be disqualified for cause if it is shown that "an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence." *Johnson v. State*, 262 Ga. 652, 653 (2) (424 SE2d 271) (1993). The record clearly shows that the trial court did not err in refusing to strike juror Youngblood for cause under the *Johnson* standard.

5. McCannon failed to object timely to the pathologist's testimony that the muzzle-to-target range was six to ten inches and that the shooter must have placed his shooting hand inside the truck as the victim fell in order to maintain that range. McCannon moved to have the testimony stricken *the day after the testimony was given* on grounds that the precise information was not contained in the autopsy report. This untimely objection and failure to move for mistrial did not preserve the alleged error for appeal. See *Isaac*, supra. See also *Ledbetter v. State*, 262 Ga. 370, 371 (3) (418 SE2d 57) (1992) (failure to object or move for mistrial waives right to review).

Even if the objection had been timely, the trial court's denial of the motion to strike was not error. The autopsy report stated that all four shots were fired from *intermediate* range. On cross-examination, McCannon's attorney prompted the pathologist to quantify intermediate range as being more than six inches but less than two feet. On re-direct, the State asked the pathologist if he could be more precise and he said the range would be six to ten inches based on the autopsy findings. The pathologist's quantification of intermediate range was elicited first by McCannon's attorney on cross-examination.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 15, 1997.

*B. W. Crecelius, Sr.,* for appellant.

*Fredric D. Bright, District Attorney, Paul L. Groth, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.