## S97A1536. JENKINS v. THE STATE.
(491 SE2d 54)

HUNSTEIN, Justice.

Clevon Jamel Jenkins and three other men were indicted on charges of murder and armed robbery in the shooting death of Riceboro grocer Bobby Hodges. The State sought the death penalty but the jury, after finding Jenkins guilty of the charges, fixed its ver-

dict at life without parole. The trial court imposed that sentence and a consecutive life sentence for the armed robbery conviction. Jenkins appeals from the denial of his motion for new trial[1] enumerating 31 errors. For the reasons that follow, we find no error in the trial court's denial of appellant's motion for new trial.

1. The jury was authorized to find that Terry Roberts drove appellant, Cedric and Shawn Brown, and Maurice Fleming to Hodges Grocery Store on October 8, 1993. Roberts remained in the car and Shawn Brown kept lookout while appellant, Cedric Brown, and Fleming robbed the store; appellant and Brown, armed with .25 caliber pistols, shot grocer Bobby Hodges five times in his face, neck and shoulder. One shot from one pistol inflicted a potentially fatal wound; a second shot, fired from another pistol, severed the victim's carotid artery. The men then left the grocery, reentered Roberts' car and urged him to speed away. While in the car appellant and Cedric Brown made statements to Roberts that they had shot the victim, joking and laughing about the money, food stamps and perfume they stole from the store. The victim was discovered minutes after the crime by other customers to the store; help was summoned, but the victim died shortly thereafter. Appellant, Cedric Brown and Fleming, after receiving their share of the robbery proceeds, fled to Florida. Authorities arrested the three men at a motel just outside Miami; a food stamp recovered from their hotel room was traced to a Riceboro citizen who shopped at Hodges Grocery. Appellant told a Florida police officer, Bart Ingram, that he only shot the victim once; appellant told McCall, a Georgia cellmate, that he shot the victim twice and was the first person to shoot him.

We find this evidence sufficient to enable a rational trier of fact to find appellant guilty of both malice murder and armed robbery beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We find no merit in appellant's contention that the trial court erred in entering a life sentence on the armed robbery conviction.

2. There is no manifest error in the trial court's denial of appellant's motion for change of venue. Appellant's argument to the contrary is based solely on his claim that over 22 percent of the jurors were excused for cause due to extensive publicity. This argument is flawed, however, by appellant's failure to utilize the correct proce-

---

[1] The crimes occurred on October 8, 1993. Jenkins was indicted December 13, 1993 in Liberty County. The State sought the death penalty. He was found guilty and the jury fixed its verdict at life without parole; the trial court sentenced Jenkins to life without parole and a consecutive life sentence on the armed robbery conviction on September 2, 1995. His motion for new trial, filed September 6, 1995 and amended March 6, 1997, was denied on May 9, 1997. A notice of appeal was filed on June 2, 1997. The appeal was docketed on June 18, 1997. Oral arguments were heard on September 15, 1997.

dure for calculating the percentage of jurors excused for cause resulting from pretrial publicity, namely, analyzing the percentage of jurors influenced by pretrial publicity to the total number of jurors *questioned*, see generally *Blanks v. State*, 254 Ga. 420 (1) (330 SE2d 575) (1985), not, as appellant has done, to the total number of jurors *excused*. Application of the correct analysis reflects a percentage less than half of the figure proposed by appellant. Based on the argument raised and our review of the record, we find no error in the trial court's finding that appellant could receive a fair trial in Liberty County. Compare *Jones v. State*, 261 Ga. 665 (409 SE2d 642) (1991).

3. We find no reversible error in the trial court's admission of testimony by Inspector Gray, Deputy Moran, Kenneth McCall, Charles Howard, Terry Roberts, Florida Department of Law Enforcement Special Agent Bart Ingram, or Officer James Smith. Gray's testimony that he investigated appellant based on information he received from an unnamed source did not constitute hearsay because Gray did not divulge the content of that information, see OCGA § 24-3-1 (a); the admission of Gray's testimony regarding the facts uncovered by his investigation, which were cumulative of properly-admitted testimony, was harmless error. *Smith v. State*, 266 Ga. 827 (4) (470 SE2d 674) (1996). Moran's testimony that, based on the results of police investigation, Terry Roberts was not prosecuted for murder, when read in context, did not raise the inferences appellant claims rendered Moran's testimony false; accordingly, the prosecution was under no duty to correct the record in regard to Moran's testimony, see *Tamplin v. State*, 235 Ga. 20 (2) (218 SE2d 779) (1975). Moran's testimony was not inadmissible on hearsay grounds. OCGA § 24-3-1 (a).

We do not agree with appellant that the testimonies of McCall (appellant's former cellmate) and Howard (who prosecuted McCall on forgery charges) that McCall was promised no deals in exchange for his testimony must be deemed false and misleading merely because habitual violator charges against McCall in another county, which were pending at trial, were dismissed months later; our review of the evidence in the record as to the handling of the habitual violator charges does not support appellant's assertion. Thus, the prosecutor was under no duty to correct the record in regard to this testimony. Further, because the charges against McCall were a matter of public record, appellant had the services of a private investigator, and McCall on direct examination stated he had other cases against him and enumerated the habitual violator case when queried about the others on cross-examination, see factor (2) in *Zant v. Moon*, 264 Ga. 93, 100 (3) (440 SE2d 657) (1994), appellant was not entitled to a new trial under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

The record contains sufficient evidence to corroborate the testimony of Terry Roberts, see generally *Bush v. State*, 267 Ga. 877 (485 SE2d 466) (1997) (only slight evidence required); we find no error in the trial court's finding after the State presented its evidence that a prima facie case of conspiracy to rob Hodges Grocery Store existed, see *Denison v. State*, 258 Ga. 690 (1) (373 SE2d 503) (1988); and the record contains sufficient indicia of reliability under *Dutton v. Evans*, 400 U. S. 74, 88-89 (91 SC 210, 27 LE2d 213) (1970) (plurality opinion) to authorize the admission of Roberts' testimony regarding statements made by appellant's co-conspirators in the concealment phase of the conspiracy. See generally *Mooney v. State*, 243 Ga. 373, 390 (254 SE2d 337) (1979) (not all indicia need be shown). Appellant cannot show how he was harmed by Roberts' passing comments which indicated that Fleming and Shawn Brown had prior criminal arrests.[2] Compare *Busbee v. State*, 210 Ga. App. 17 (435 SE2d 60) (1993); *Hill v. State*, 176 Ga. App. 509 (3) (336 SE2d 276) (1985). The admission of testimony by Special Agent Ingram regarding his efforts in Florida to locate appellant and the second pistol used in the crime, even if error, does not require reversal; contrary to appellant's position, Georgia does not recognize the cumulative error rule. *Polk v. State*, 225 Ga. App. 257 (1) (d) (483 SE2d 687) (1997). The trial court's pre-trial ruling on the admissibility of appellant's spontaneous statement to Detective Smith was affirmed by this Court in *Jenkins v. State*, 265 Ga. 539 (2) (458 SE2d 477) (1995) and our review of Detective Smith's entire testimony at trial fails to establish any clear error in that pre-trial ruling.

4. The trial court's exclusion of evidence regarding Cedric Brown's guilty plea during the guilt-innocence phase was correct under the well-recognized rule of inadmissibility regarding such evidence. *Neal v. State*, 160 Ga. App. 834 (3) (288 SE2d 241) (1982).[3] We find no error in the exclusion of this evidence at the penalty phase as Brown's guilty plea had no relevance to appellant's character, prior record or the circumstances of the offense, *Wilson v. State*, 250 Ga. 630 (12) (300 SE2d 640) (1983), and it is for this Court, not the jury, to determine whether a defendant's sentence is excessive or dispro-

---

[2] In the course of describing how all the co-indictees got together before the crimes, Roberts testified that Fleming contacted him and asked for a ride out of town, stating that there was a bench warrant out for him, and that the men eventually picked up appellant and Cedric Brown, who asked Roberts to take Brown's mother to the police station because Shawn Brown had been arrested at school that afternoon. Roberts complied and that was how Shawn Brown joined the co-indictees.

[3] Appellant improperly seeks to expand this enumeration of error by including a challenge to the trial court's ruling withholding Cedric Brown's mental health records from appellant. Appellant sought these records for impeachment purposes; because Brown did not testify at trial, this argument is moot.

portionate to the sentences imposed on others. Id.

5. We find no abuse of the trial court's discretion in regard to the prosecution's alleged use of leading questions. See generally *Wright v. State*, 220 Ga. App. 233 (4) (469 SE2d 381) (1996).

6. The prosecutor's closing argument, read in context, did not comment upon appellant's election not to testify but rather permissibly noted the failure of the defense to rebut the State's evidence. *Isaac v. State*, 263 Ga. 872 (4) (b) (440 SE2d 175) (1994). Contrary to appellant's contention, this was not an instance in which appellant himself was the only potential witness the defense could have called. See generally *United States v. Sblendorio*, 830 F2d 1382, 1391 (1) (7th Cir. 1987). We have carefully reviewed appellant's other enumerations regarding the prosecutor's closing argument in both phases of the trial and find there were no misrepresentation of the law or the facts and no improper inflammation of jurors' emotions.

7. The record reveals that the trial court's ruling on a point of law did not constitute an improper comment on the evidence and thus did not taint the jury.

8. We find no error in the trial court's charges on malice murder, parties to a crime, and conspiracy. The murder charge did not eliminate the State's burden of proof on intent and appellant's argument regarding the "abandoned and malignant heart" instruction was rejected by this Court in *Walden v. State*, 251 Ga. 505 (1) (307 SE2d 474) (1983). The principles set forth in the parties to a crime and conspiracy charges properly reflected Georgia law. See *Cargill v. State*, 256 Ga. 252 (1) (347 SE2d 559) (1986) and *Berry v. State*, 248 Ga. 430, 432 (1) (283 SE2d 607) (1981).

9. We find no error in the trial court's failure during the guilt-innocence phase to charge on corroboration of accomplices or co-conspirators. It is not error to fail to give a charge on corroboration of accomplices where the State relies upon other evidence, including a defendant's confession, apart from the accomplice's testimony. *Hall v. State*, 241 Ga. 252 (7) (244 SE2d 833) (1978); *Lanford v. State*, 148 Ga. App. 377 (2) (251 SE2d 395) (1978). The trial court's charge fully and correctly instructed the jury on the principles of conspiracy[4] and we find no merit to appellant's claim that the trial court was required to tailor that charge to specifically address the testimony of Terry

---

[4] The trial court's charge tracked almost verbatim the conspiracy charges in the Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions Vol. II: Criminal Cases (2d ed.) (1991), Part 4, R. Conspiracy (2), (3), (4), and the first paragraph in (5) with an abbreviated version of the second paragraph in (5). The charge thus included the language: "If the existence of a conspiracy has been shown beyond a reasonable doubt by evidence other than by the declarations of any of the alleged co-conspirators, then any admissions or statements made by one or more of the conspirators during and in the furtherance of the alleged conspiracy may be considered by you, the jury, against all of them."

Roberts.

The trial court's failure during the penalty phase to charge on parole eligibility was not error. *Philpot v. State*, 268 Ga. 168 (2) (486 SE2d 158) (1997).

10. Appellant contends the trial court erred by denying his motion for a new trial on the basis that he received ineffective assistance of trial counsel. In determining whether a convicted defendant's claim that trial counsel's assistance was so defective as to require reversal of the conviction, this Court applies the two-prong test set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), under which the defendant is required to show both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Goodwin v. Cruz-Padillo*, 265 Ga. 614 (458 SE2d 623) (1995). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, supra, 466 U. S. at 691 (B). Appellant sets forth 16 particulars of alleged ineffectiveness. We have already addressed and found to be without reversible error 13 of the items in which counsel was claimed to be ineffective.[5] Thus, appellant cannot establish the second prong of the *Strickland* test as to those items. Reviewing the transcript of the hearing on appellant's motion for new trial in regard to the remaining three items, the record reveals that trial counsel's decisions not to impeach Roberts with his prior inconsistent statements[6] in order to retain open and concluding final argument, see *Victorine v. State*, 264 Ga. 580 (6) (449 SE2d 91) (1994), and not to introduce the issue of Cedric Brown's mental retardation in order to avoid undermining the defense theory that Brown was the "mastermind" of the crimes, were matters of trial strategy and tactics within the bounds of reasonable professional conduct. See generally *Willingham v. State*, 268 Ga. 64 (6) (485 SE2d 735) (1997). Likewise, trial counsel's strategy and tactics in advising appellant not to testify did not fall outside the wide range of reasonable professional conduct. *Bridges v. State*, 205 Ga. App. 664 (2) (423 SE2d 293) (1992). Accordingly, the trial court did not err by denying appellant's claim of inef-

---

[5] Items 2, 3, 4, 6, 10 and 12 were addressed in Division 3; item 7 was addressed in Division 5; items 8 and 9 were addressed in Division 6; item 11 was addressed in Division 7; item 13 was addressed in Division 8 (we further note that counsel reserved all objections to the charge, so the failure to object to specific charges did not constitute deficient performance, *Bridges v. State*, 205 Ga. App. 664 (2) (423 SE2d 293) (1992)); items 1 and 5 were addressed in Division 9.

[6] The trial transcript reveals that Roberts' prior inconsistent statements were before the jury, in that Roberts testified on direct that the first couple of times he spoke with police he did not tell them the whole truth and acknowledged, during stringent cross-examination, that he had "lied" to the police in his earlier statements.

fective assistance of counsel.

11. Appellant argues OCGA § 17-10-31.1 is unconstitutional because it fails to provide juries with appropriate guidance and thus allows the jury to act arbitrarily. However, because under OCGA § 17-10-31.1 a jury cannot impose a sentence of life without parole without including a finding of at least one statutory aggravating circumstance as defined in OCGA § 17-10-30 (b), see OCGA § 17-10-30.1 (a), we reject appellant's argument for the same reasons OCGA § 17-10-30 has been found to be constitutional. See *Gregg v. Georgia*, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976); *McCleskey v. Kemp*, 481 U. S. 279 (107 SC 1756, 95 LE2d 262) (1987).

*Judgment affirmed. All the Justices concur.*

THOMPSON, Justice, concurring.

I fully concur with all that is said by the majority, but I write separately to propose a prophylactic rule which would help reviewing courts evaluate post-trial claims, such as raised by Jenkins, that counsel was ineffective in advising a defendant to give up the right to testify at trial. The better practice, and one which has been utilized effectively by some trial judges throughout the state, is for the court to conduct an inquiry on the record, outside the presence of the jury, during which the defendant is advised of the right to testify and the implications inherent in relinquishing that right, and to obtain a knowing and intelligent waiver on the record. Such an inquiry was made by the trial judge in this case. Accordingly, the record reflects that defendant's right to testify was protected and that defendant himself made the decision not to testify. These factors go a long way toward a proper resolution of defendant's claim.

I am authorized to state that Justice Sears and Justice Carley join in this concurrence.

DECIDED OCTOBER 6, 1997.

*Robert F. Pirkle,* for appellant.

*Dupont K. Cheney, District Attorney, J. Thomas Durden, Jr., Ross H. Pittman III, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.