## 34300. TODD v. THE STATE.

HILL, Justice.

The appellant, Ralph Lee Todd, was indicted on October 1, 1976, for the murder of Blair Thomas. He was tried by a jury and found guilty; the state had sought the

death penalty, but because the jury was unable to reach a verdict as to sentence, the trial court sentenced him to life imprisonment.[1]

The evidence showed that two female Clark College students left Church's Fried Chicken near Morris Brown College about midnight on September 12, 1976. As they walked toward the campus, a man behind them who was wearing a dark blue jacket and dark blue skullcap grabbed their collars and pointed a gun at one student's head. Their assailant said that they had robbed his cousin and he wanted the money. The two women denied this. One of them said she only had a dollar which she gave the assailant.

He then forced the students to walk to a nearby field. As they reached the field, one of the young women fell to her knees, crying. Both of them then noticed Blair Thomas and another male student coming down the street. One of the young women called out for help; the other shouted that the man had a gun. The assailant then told the young men to get away and fired at them. Both fell to the ground and then got up and ran, but Blair Thomas had sustained a fatal gunshot wound from which he died shortly.

A detective investigating the case obtained Todd's name as a suspect. On September 18, 1976, he showed one of the two young women a photographic lineup consisting of six color pictures; she selected Todd's picture. She later picked Todd out of a lineup. Neither the other young woman nor the surviving young man could identify Todd.

Following the photographic lineup, Todd was arrested and his apartment was searched pursuant to a warrant. The police confiscated several items, including a high school class ring, three skullcaps, and a pawn ticket for a .38 pistol. A crime lab microanalyst testified at the trial that the bullet which killed Thomas had been fired from this pistol.

Todd himself testified that on the night of September 12, 1976, he was at home with his girlfriend with whom he

---

[1] This appeal follows an out-of-time motion for new trial which was allowed by the trial court.

lived. He also testified that he had loaned his pistol to a friend, Willis LaFrance Taylor, about September 2. He was not sure when Taylor had returned it except that he did so on a Monday morning. Todd also testified that when Taylor returned the gun a bullet was missing. He asked Taylor what had happened to it and Taylor replied that he thought he had shot someone. Todd said he didn't take this remark seriously.

Todd's girlfriend corroborated his testimony and, along with other defense witnesses, testified that there was a marked physical similarity between Taylor and Todd.

On rebuttal, a detective testified that the defendant reported to him that he saw a Larry Greenway shoot the victim.

1. Todd's first enumeration of error is that the trial court erred in overruling his motion for new trial on the general grounds. The evidence supports the verdict of guilty, and the trial court did not err in overruling the motion. *Ridley v. State,* 236 Ga. 147 (1) (223 SE2d 131) (1976).

2. Todd's second enumeration of error is that the trial court erred in overruling his motion to have the court reporter read the testimony of Willis LaFrance Taylor from the transcript of the preliminary hearing because Taylor was not present at the trial. The evidence showed that Taylor had been listed as a state witness for the trial. On the first day of trial, December 6, 1976, the defendant learned that the state did not intend to call Taylor. He had not been subpoenaed by the state. According to defense counsel, he procured a subpoena for Taylor about noon on December 6 and gave it to the sheriff. The sheriff was unable to locate Taylor. The deputy sheriff assigned to the trial court testified that he was asked to locate and serve a subpoena on Taylor on December 7 through use of a telephone number that turned out to be that of Taylor's great aunt. He further testified that although to his personal knowledge no subpoena was issued, he did obtain an address which he gave to defense counsel that same day. He also said he told defense counsel that he had been told that Taylor was at work but whomever he talked to did not know where he worked. Defense witnesses

corroborated defense counsel's statement that prior to trial they had made some efforts to locate Taylor, but defense counsel admitted that the pre-trial search was limited: "We tried to locate him before this. We did not try real hard before Monday, but we made inquiry to the family of, — basically the family relatives and friends of Mr. Todd, to locate Mr. Taylor, but . . ."

The issue before the trial court was whether defendant had shown that the witness was "inaccessible" under Code Ann. § 38-314. The evidence supports the trial court's determination that defendant did not show that Taylor could not "with due diligence be found within the state." *LaCount v. State,* 237 Ga. 181, 182 (227 SE2d 31) (1976). Defendant was not entitled to rely on the appearance of the witness' name on the state's witness list. *Bonds v. State,* 232 Ga. 694 (5) (208 SE2d 561) (1974). This was a death penalty case; the efforts by the defense to locate this witness were minimal, bordering on the strategic, rather than diligent. The trial court did not abuse its discretion in overruling defendant's motion. *Whatley v. State,* 230 Ga. 523 (198 SE2d 176) (1973).

3. Todd's third enumeration of error is that the trial court either failed to exercise or abused its discretion in not declaring a mistrial when the jury sent out a note declaring that is was "hopelessly deadlocked" and announcing how it stood. The record shows that the note was sent to the trial judge at 11:30 a.m. The trial judge asked counsel for authority as to whether he need declare a mistrial, and then decided to research the problem himself. He told the sheriff to take the jury to lunch at noon, and stated that he would announce his decision at 1 p.m. At 12:10, however, he announced that he had received a second note in which the jury announced that it wished to continue its deliberations. The record is clear that the trial judge did not err in allowing deliberation to continue while he researched the matter and in not declaring a mistrial after the second note. The trial judge is not bound to accept the jury's feeling that it is hopelessly deadlocked.

4. Todd's fourth enumeration of error is that the trial court erred in charging felony murder in a recharge requested by the jury where the felony murder charge had

not been included in the original charge. The state pointed out the omission of the felony murder charge after the original charge was given, but the trial judge decided not to add it at that point. Subsequently, however, when the jury requested a recharge, the trial court included a charge on felony murder. We have reviewed the charge and find that no undue emphasis was placed on this portion, which constitutes one 9-line paragraph in a 10-page charge. Furthermore, out of an abundance of caution, the trial court did not add a separate verdict form for felony murder to those already in the possession of the jury. Todd does not argue that the charge was not authorized by the evidence and we find there was no undue prejudice to the defendant.

5. In his fifth, sixth and seventh enumerations of error, Todd argues that the trial court erred in overruling his motion in limine and allowing testimony regarding similar transactions. The testimony at issue was given by three women.

During the testimony of these witnesses, the trial court instructed the jury that the evidence was being admitted only for the limited purpose of "showing motive, plan, scheme, bent of mind, course of conduct or identity . . ." Two of the women testified as to an assault that occurred about 10:15 p.m. on September 7, 1976, after they left a Burger King near the Morris Brown campus and were on their way back to their dormitory. They identified Todd as the man who, wearing a black skullcap, had come up behind them with a gun and accused them of beating up his brother and taking his money. He forced them to walk down a wooded path behind Church's, and to disrobe. He also robbed them of the money they had with them, which was less than $9 total, and of their jewelry, including a high school class ring, with the initials of one of the witnesses, that was recovered in the search of Todd's apartment.

The third woman testified that she and her sister were approached from behind by a man with a gun wearing a blue jacket and blue knit skullcap about 10:30 p.m. on the evening of March 4, 1976, as they walked from a basketball game at the Omni toward the Atlanta University Center. The man, whom she identified as

Todd, forced them to walk behind a church which is located within two blocks of the Church's Fried Chicken and the Burger King involved in the other incidents. He robbed them of approximately $55 and a watch. He then sent the sister for $5 more. After the sister left he forced the witness into a car and drove her to a nearby school where he took her jewelry and forced her to disrobe.

We find that this testimony was admissible because of the marked similarity between the transactions, and because the defendant was identified as the perpetrator by the victims. *French v. State,* 237 Ga. 620 (229 SE2d 410) (1976); *Hamilton v. State,* 239 Ga. 72, 75 (235 SE2d 515) (1977). The three incidents all commenced between 10 p.m. and midnight in a highly constricted area, when two women were approached from behind by a man wearing a dark skullcap, and carrying a gun; they all involved the women being forced to walk to or toward isolated areas, and they all involved robbery. The defendant was identified as the assailant in each case. The fact that one of the witnesses testified that defendant raped her,[2] and no rape occurred on the night of the murder for which he was being tried, does not require reversal.

6. Todd's eighth enumeration of error is that the trial court erred in admitting into evidence a sawed-off shotgun seized during the search of his apartment over his objection that it was irrelevant, immaterial, and served no purpose. In view of the fact that a photograph clearly showing the shotgun was admitted without objection, the admission of the shotgun itself was not error. *Massey v. State,* 220 Ga. 883, 891 (142 SE2d 832) (1965).

7. Contrary to Todd's contention in Enumeration 9, the trial court did not abuse its discretion by sustaining the state's objection to defendant's question put to a juror on voir dire: "Do you feel that because the State has brought charges against Ralph Lee Todd that he is, in fact, guilty?" *Stack v. State,* 234 Ga. 19 (2) (214 SE2d 514) (1974); *McNeal v. State,* 228 Ga. 633 (3) (187 SE2d 271)

---

[2] Our review of the record shows that this testimony was not deliberately elicited by the prosecutor.

(1972); Code Ann. § 59-705.

8. Todd's tenth and final enumeration of error is that the trial court erred in overruling his motion for a mistrial based on a newspaper article about the trial that was published on the morning of December 7, 1976, the second day of trial, when the jury was not as yet sequestered. The trial judge questioned each juror separately and they all denied any knowledge of the article. Defendant argues now, as he did then, that a mistrial was required because the jurors might not have admitted that they had read or heard about the article. To sustain such an argument would constitute impeachment of the jury system itself, without a scintilla of supporting evidence; there is no merit in this enumeration.

*Judgment affirmed. All the Justices concur.*

ARGUED JANUARY 10, 1979 — DECIDED APRIL 4, 1979 — REHEARING DENIED APRIL 24, 1979.

*Louise T. Hornsby, Eloise W. Newhard,* for appellant.

Ralph Lee Todd, *pro se.*

*Arthur K. Bolton, Attorney General, William B. Hill, Jr., Staff Assistant Attorney General, Lewis R. Slaton, District Attorney, Victor Alexander, Jr., Assistant District Attorney,* for appellee.