## S98P1359. SPEED v. THE STATE.
### (512 SE2d 896)

FLETCHER, Presiding Justice.

A jury convicted Norris Speed of malice murder in the shooting death of Atlanta Police Officer Niles Johantgen, and Speed was sentenced to death.[1] The jury found as aggravating circumstances that the murder was committed against a peace officer while engaged in the performance of his official duties[2] and that the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest of the defendant or another.[3] Speed challenges the trial court's in-camera conversation with a prospective juror, its evidentiary ruling limiting the defense psychologist's testimony, and its failure to give charge number 21. We conclude that Speed waived his right to be present during the in-camera questioning of the prospective juror and did not object when the juror was excused for cause, the record shows that the defense psychologist testified about the basis for his opinion including the persons he interviewed and Speed's family history, and the trial court was not required to give charge number 21 on when police may make a warrantless arrest.

---

[1] The crime occurred on December 21, 1991. The grand jury indicted Speed for malice murder on January 28, 1992, and the state filed a notice of intent to seek the death penalty on February 10, 1992. The trial took place from September 7 to October 1, 1993. The jury convicted Speed of malice murder on September 27, 1993, and recommended a death sentence on October 1, 1993. Speed filed a motion for new trial on October 11, 1993, which was amended on October 25, 1993, and further amended on March 20, 1995, and May 25, 1995. The trial court denied the motion for new trial on March 24, 1998. Speed filed his notice of appeal on April 20, 1998, and this case was docketed on May 20, 1998. The case was orally argued on September 14, 1998.

[2] OCGA § 17-10-30 (b) (8).

[3] OCGA § 17-10-30 (b) (10).

Because none of the issues raised constitute reversible error, we affirm.

## SUFFICIENCY OF THE EVIDENCE

The evidence shows that Norris Speed was a drug dealer who sold drugs in the Thomasville Heights area of Atlanta. Officer Johantgen was a uniformed patrol officer whose regular beat included the Thomasville Heights apartments. On December 13, 1991, an Atlanta police undercover officer arrested Jose Griffin, who worked for Speed, after he had fled into Speed's grandmother's apartment. The police confiscated $2,880 and 100 grams of cocaine during this arrest. The police also noticed some marijuana on a table in the apartment, and they returned with an arrest warrant for Speed's grandmother. Although Officer Johantgen was not involved in the undercover operation, he accompanied the other officers when they served the warrant. Speed told his drug ring boss that he believed the raid resulting in the loss of the drugs and money was "influenced by" Officer Johantgen. He told another witness that he planned to kill "the Russian" (Officer Johantgen's nickname).

On December 21, 1991, Officer Johantgen pulled into the parking lot of the Thomasville Heights apartments, got out of his car, and approached several men. He detained one of the men and began to frisk him. Speed walked up behind Officer Johantgen and shot him point-blank in the back of the head with a nine-millimeter pistol, killing him instantly. Speed fired four more times at the officer while he was on the ground, but all of these shots missed and shattered on the pavement. Speed then fled the scene in a car. At trial, one witness testified that he saw Speed, who was well-known in the area, walk up behind the officer and fire the fatal shot into his head. Five more witnesses testified that they heard the first shot, looked up, and saw Speed shooting at the officer on the ground.

After Speed fled, he met with his drug-ring boss and told him that he had shot the Russian because Officer Johantgen had threatened to "catch him dirty" and because the officer was harassing people and searching them unnecessarily. Speed's girlfriend heard him tell his drug boss that he shot the Russian. Both Speed's drug boss and his girlfriend testified at trial. Speed was arrested two days after the crime and he confessed that he shot Officer Johantgen.

1. After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Speed guilty of malice murder beyond a reasonable doubt.[4] The evidence was also sufficient to enable the jury to find the

---

[4] *Jackson v. Virginia*, 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979).

existence of the statutory aggravating circumstances beyond a reasonable doubt.[5]

## JURY SELECTION

2. Speed complains that the trial court questioned a prospective juror on voir dire in camera without Speed or his counsel present. The prospective juror claimed that he could not be impartial because he had overheard a conversation about the case at his workplace, but the juror refused to divulge what he had heard.[6] Speed initially objected to the trial court questioning the juror in camera without the parties but later agreed to the procedure, saying "I'm not happy . . . but I would prefer that procedure over not talking to him at all." Speed made no further objection after the in-camera questioning was completed, and the juror was excused for cause due to his inability to be impartial.

A defendant and his counsel have a constitutional right to be present at every stage of the defendant's trial, including voir dire.[7] This right, however, may be waived by the defendant personally, or by his counsel if done in the defendant's presence.[8] The record shows that Speed waived his right to be present during the in-camera questioning of the prospective juror, and he made no objection when the prospective juror was excused for cause. Therefore, this issue is waived on appeal.[9]

3. The trial court did not err by excusing for cause four prospective jurors due to their inability to consider a death sentence.[10] The trial court also did not err by qualifying seven prospective jurors who Speed claims would automatically vote for a death sentence.[11]

4. No prospective jurors were erroneously qualified to serve due to their exposure to pretrial publicity; the seven jurors about whom Speed specifically complains did not have opinions so fixed and definite that they could not set them aside and render a decision based solely on the evidence presented in court.[12] The trial court also did

---

[5] Id.; OCGA § 17-10-35 (c) (2).

[6] The record of the in-camera discussion shows that the prospective juror was afraid that he could be called as a witness in the case.

[7] Ga. Const. 1983, Art. I, Sec. I, Par. XII; *Goodroe v. State*, 224 Ga. App. 378, 380 (1) (480 SE2d 378) (1997).

[8] *Wilson v. State*, 212 Ga. 73, 75 (90 SE2d 557) (1955); *Harmon v. State*, 224 Ga. App. 890, 891 (1) (482 SE2d 730) (1997).

[9] See *Harmon*, 224 Ga. App. at 891-892 (1).

[10] *Wainwright v. Witt*, 469 U.S. 412, 424 (II) (105 SC 844, 83 LE2d 841) (1985); *Greene v. State*, 268 Ga. 47, 48 (485 SE2d 741) (1997).

[11] *Wainwright v. Witt*, 469 U.S. at 424 (II); *Greene v. State*, 268 Ga. at 48.

[12] *Irvin v. Dowd*, 366 U.S. 717, 723 (81 SC 1639, 6 LE2d 751) (1961); *Norton v. State*, 263 Ga. 448, 449 (2) (435 SE2d 30) (1993).

not err by denying Speed's motion for a change of venue.[13]

5. Prospective jurors Foley, Miller, Lindsey, and Pittman were not erroneously qualified to serve for any reason stated by Speed.

6. The trial court did not err by denying Speed's *Batson v. Kentucky*[14] motion. The reasons given by the state for the exercise of its peremptory strikes were race-neutral and sufficient.[15]

7. During voir dire, a prospective juror stated that she believed that the justice system was biased against African-Americans and that she has "an awareness" that the death penalty is sought more for black defendants who kill white victims (Speed is African-American and the victim was white). When the prosecutor asked her how strongly she held this belief, Speed's counsel objected to this line of questioning saying, in front of the juror, "It's a fact. [The assistant district attorney] knows that his office seeks the death penalty more often against black defendants." The trial court told Speed's counsel that it was not the proper time to testify. Later, the state moved to excuse this prospective juror for cause based on defense counsel's comment, and the trial court excused her. We find no error. "The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. The control of the pursuit of such determination is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review."[16] We conclude that the trial court did not abuse its discretion in excusing this prospective juror for cause due to bias resulting from defense counsel's comment.[17]

## GUILT-INNOCENCE PHASE

8. It was not improper for the state to introduce evidence of Speed's drug dealing and to refer to Speed as a drug dealer. Speed's drug dealing was relevant to his motive for the murder, and relevant evidence does not become inadmissible simply because it incidentally places a defendant's character into evidence.[18]

9. The state's introduction of a previous homicide committed by Speed as a similar transaction was not error.[19]

---

[13] *Jones v. State*, 267 Ga. 592, 594 (1) (a) (481 SE2d 821) (1997).

[14] 476 U.S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[15] See id.; *Barnes v. State*, 269 Ga. 345, 349-351 (6) (496 SE2d 674) (1998).

[16] *Whitlock v. State*, 230 Ga. 700, 706 (5) (198 SE2d 865) (1973).

[17] See id.; *Westbrook v. State*, 242 Ga. 151, 154 (3) (249 SE2d 524) (1978) (whether to strike a juror for cause lies within the trial court's discretion).

[18] *Mize v. State*, 269 Ga. 646, 650 (3) (501 SE2d 219) (1998).

[19] See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991); *Farley v. State*, 265 Ga. 622, 622-626 (2) (458 SE2d 643) (1995); *Jackson v. State*, 261 Ga. 734, 735 (2) (410 SE2d 115) (1991).

10. Speed's arrest was lawful and his confession was voluntary.

11. It is not error to allow the jury to have a written transcript of tape-recorded evidence when a proper foundation has been made.[20] Although Speed complains that he was not provided before trial with the transcript of the audiotape of the police radio traffic at the time of Officer Johantgen's death, he did not object to the use of the transcript at trial or argue that any portion of the transcript differed from the audiotape.[21] The jury was also instructed that the transcript was not evidence.[22] Therefore, this contention is without merit.

12. The trial court did not err by denying Speed's motion for mistrial because there was insufficient evidence that the state had violated the trial court's gag order.

13. Speed did not object when the victim's widow identified the victim in a photograph taken when he was alive, but did object that the photograph was irrelevant and inflammatory when it was later admitted into evidence. Under these circumstances, we find no error.[23]

14. The trial court did not abuse its discretion in admitting pre-autopsy photographs of the deceased victim.[24] The admission of crime scene photographs was also not error.

15. The trial court did not abuse its discretion by allowing the state to use a mannequin dressed in the victim's jacket as a demonstrative tool during the questioning of the medical examiner.[25] The medical examiner used the mannequin to illustrate for the jury how bullet-fragment damage to the victim's body and jacket was consistent with the crime scene evidence.

16. Speed was not harmed by the admission of Officer Johantgen's death certificate.[26]

17. The trial court did not abuse its discretion in qualifying the medical examiner as an expert witness in injury causation and interpretation.[27] It was also not error to qualify the state firearms expert

---

[20] *Carey v. State*, 257 Ga. 134, 135 (2) (356 SE2d 507) (1987).

[21] See *Earnest v. State*, 262 Ga. 494, 495 (1) (422 SE2d 188) (1992) (alleged errors not raised at trial will not be heard on appeal).

[22] See *Carey*, 257 Ga. at 135 (2).

[23] See *Garcia v. State*, 267 Ga. 257, 257 (2) (477 SE2d 112) (1996); *Ledford v. State*, 264 Ga. 60, 66-67 (14) (439 SE2d 917) (1994).

[24] See *Hayes v. State*, 268 Ga. 809, 812 (5) (493 SE2d 169) (1997); *Bright v. State*, 265 Ga. 265, 284 (16) (455 SE2d 37) (1995); *Osborne v. State*, 263 Ga. 214, 215 (2) (430 SE2d 576) (1993).

[25] See *Powell v. State*, 226 Ga. App. 861, 862 (1) (487 SE2d 424) (1997) (whether courtroom demonstration will be permitted rests within the sound discretion of the trial court).

[26] See *Foster v. State*, 259 Ga. 206, 207 (3) (378 SE2d 681) (1989).

[27] *Carr v. State*, 267 Ga. 701, 708 (6) (482 SE2d 314) (1997) (expert may be qualified based on specialized education or experience); *Bowden v. State*, 239 Ga. 821, 826 (3) (238 SE2d 905) (1977) (whether a witness qualifies as an expert lies within the trial court's discretion).

as an expert in crime scene reconstruction.[28]

18. The trial court did not abuse its discretion in allowing certain questions to be asked on the redirect examination of witness Johnny Roberts.[29]

19. The trial court did not improperly restrict the cross-examination of witness James Sims.[30]

20. The trial court did not err in ruling that the state could impeach state witness Patrick Norman with a prior inconsistent statement and allowing the prior statement to be admitted into evidence.[31]

21. The state did not improperly question state witness Christine Bibbs about a prior inconsistent statement that she made to police.[32]

22. During the direct examination of Dwayne Gatlin, the state elicited that he had previously been convicted of forgery and mail theft. On cross-examination, Speed began to question Gatlin about the facts and circumstances behind these convictions, but the trial court sustained a state objection that the proper method of impeachment was through certified copies of the convictions. Although a party generally must prove a prior conviction by introducing a certified copy of the conviction, this requirement may be waived.[33] In this case, the prosecutor waived the best evidence objection by eliciting on direct examination the witness's testimony about his prior convictions, and the trial court erred in sustaining the state's objection. This error was harmless, however, because the witness admitted his convictions and offered no favorable explanation for them and there was overwhelming evidence of the defendant's guilt.

23. The trial court did not abuse its discretion in allowing certain questions to be asked on the redirect examination of witness Steve Burton.[34]

24. Pretermitting the issue of admissibility, Speed was not harmed by the introduction of an incriminating statement that he made to his girlfriend while in jail because it was cumulative of the

---

[28] See *Carr v. State*, 267 Ga. at 708 (6); *Bowden v. State*, 239 Ga. at 826 (3).

[29] *Appleby v. State*, 256 Ga. 304, 306 (4) (348 SE2d 630) (1986) (scope of redirect examination not error unless trial court abused its discretion).

[30] See *Givens v. State*, 264 Ga. 522, 523 (2) (448 SE2d 687) (1994) (trial court has discretion to limit the scope of cross-examination).

[31] See *Duckworth v. State*, 268 Ga. 566, 568 (1) (492 SE2d 201) (1997) (prior inconsistent statement admissible as substantive evidence if witness present at trial and subject to cross-examination); *Wilson v. State*, 235 Ga. 470, 474 (1) (219 SE2d 756) (1975) (a party can impeach its own witness).

[32] See *Duckworth*, 268 Ga. 568-569 (1).

[33] See *Harwell v. State*, 270 Ga. 765 (512 SE2d 892) (1999).

[34] See *Appleby*, 256 Ga. at 306 (4).

overwhelming evidence of his guilt.[35]

25. The trial court did not abuse its discretion in limiting Speed's cross-examination of state witness Jeff Goodwin.[36]

26. During the trial, a bailiff informed the trial court that a juror had complained that Juror Washington claimed that he knew the victim and would vote the opposite of the other jurors. The trial court questioned Juror Washington, who denied saying that he knew the victim or would vote the opposite of the other jurors. The trial court then individually questioned the other jurors. Six jurors stated that Juror Washington had either claimed that he knew the victim or would vote the opposite of the others. One juror stated that Juror Washington had said, "we all know what we have to do," and another juror stated that Juror Washington had been singing, "I know who's guilty." However, the jurors other than Juror Washington denied discussing the outcome of the case, and all stated that they would be fair and impartial. Therefore, the trial court did not abuse its discretion in denying Speed's motion for mistrial.[37] The trial court also did not err by excusing Juror Washington and replacing him with an alternate juror.[38]

27. An assistant district attorney did not violate *Caldwell v. Mississippi*[39] by introducing one of her colleagues during the opening statement in the guilt-innocence phase as an "appellate lawyer in our office."[40]

28. Speed was not harmed by the prosecutor's introduction of the district attorney, who was seated at the prosecution table, during the closing argument in the guilt-innocence phase.[41]

29. The state's closing argument in the guilt-innocence phase was not improper.

## SENTENCING PHASE

30. Contrary to Speed's contention, the trial court allowed Speed's psychologist to testify about the basis for his opinion, and it only prevented Speed's expert from repeating verbatim his conversa-

---

[35] See *Bridges v. State*, 268 Ga. 700, 707 (3) (492 SE2d 877) (1997).

[36] See *Givens*, 264 Ga. at 523 (2).

[37] See *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997).

[38] See *McGuire v. State*, 200 Ga. App. 509, 510 (3) (408 SE2d 506) (1991).

[39] 472 U.S. 320 (105 SC 2633, 86 LE2d 231) (1985) (Eighth Amendment violation for jury in capital case to be led to believe that the responsibility for their sentencing decision rests elsewhere).

[40] See *Stripling v. State*, 261 Ga. 1, 7 (9) (c) (401 SE2d 500) (1991); *Moon v. State*, 258 Ga. 748, 756 (15) (375 SE2d 442) (1988) (trial court's passing reference to appellate review cured by jury charge).

[41] See *Hicks v. State*, 256 Ga. 715, 730 (23) (352 SE2d 762) (1987).

tions with Speed's family members and friends.[42] To show the basis for his opinion, the defense psychologist was permitted to list the people he had interviewed about Speed's background and to recite Speed's family history, including anecdotal incidents from Speed's childhood. Thus, Speed's argument that the state psychologist attacked the defense psychologist for lacking a basis for his opinion, which Speed was allegedly unable to introduce, is without merit. In fact, the record shows that the state psychologist, who testified in rebuttal, commended the defense psychologist on the thoroughness of his background investigation. The state expert simply stated that he had not heard any testimony from the defense psychologist, or read anything in his report, that would support a diagnosis of dependent personality disorder. We find no error.

31. Speed was not harmed by the failure of the state psychologist, who did not examine the defendant, to reduce his findings to writing and serve them on the defense before trial.[43] The record shows that the state psychologist was not contacted until the trial had begun, and defense counsel was able to interview the state psychologist before any psychological testimony was introduced by either side.

32. OCGA § 17-10-1.2 on victim-impact evidence is not unconstitutional, and it is not an ex post facto law violation to apply this statute to a crime that was committed before the statute was enacted.[44] The only victim-impact witness was Officer Johantgen's widow and her brief testimony was not improper.[45] Speed's trial occurred two months after OCGA § 17-10-1.2 was enacted, and the pretrial procedure and jury charge now used with victim-impact evidence had not been formulated by this Court.[46] Speed did not request a jury charge on victim-impact evidence. We conclude that Speed was not harmed by the lack of a pretrial hearing or a jury charge on victim-impact evidence.

33. Speed complains that the state committed prosecutorial misconduct by asking an improper question to witness Major Taylor. The trial court, however, sustained Speed's objection to the question and Speed did not request further action by the trial court. After an objection to an improper question is sustained, there is no reversible error

---

[42] See *Lawrence v. State of Georgia*, 201 Ga. App. 7, 7-8 (1) (410 SE2d 136) (1991); *Blackburn v. State*, 180 Ga. App. 436, 437 (3) (349 SE2d 286) (1986).

[43] The defense did not serve its expert's psychological report on the state until almost a week after the trial had begun.

[44] *Livingston v. State*, 264 Ga. 402, 404-405 (1) (c), (e) (444 SE2d 748) (1994).

[45] See *Pickren v. State*, 269 Ga. 453, 453-454 (1) (500 SE2d 566) (1998); *Turner v. State*, 268 Ga. 213, 215 (2) (b) (486 SE2d 839) (1997).

[46] See *Livingston*, 264 Ga. at 405 (1) (d); *Turner*, 268 Ga. at 216 (2).

absent a request from the complaining party for additional corrective action.[47]

34. Speed asked mitigation witness Reverend Butts if he had observed the police treatment of other young black males in the Thomasville Heights area. The state objected on relevancy grounds, and the trial court sustained the objection. We find no error. While the permissible scope of mitigation evidence is wide, mitigation evidence must relate to the defendant's character or background or circumstances of the offense on trial.[48] The witness testified that he had never observed any police interaction with Speed, and evidence of how others may have been treated by the police is irrelevant.[49]

35. The state's cross-examination of Reverend Butts was not improper.[50]

36. The trial court did not abuse its discretion in limiting Speed's cross-examination of the victim's police supervisor.[51]

37. A jailer who had observed Speed every day for at least eight months testified as a mitigation witness and stated that Speed was a quiet, compassionate inmate. On cross-examination, the prosecutor, apparently anticipating the testimony of the defense psychologist that Speed had a dependent personality disorder, asked the jailer if Speed had a dependent or independent personality. Speed objected that the jailer was not qualified to answer the question, but the trial court overruled the objection. The jailer answered that Speed had a strong, independent personality based on his demeanor and character and that he did not seem to depend on any jailer or inmate. The jailer also testified over objection that he was surprised that the defense psychologist had diagnosed Speed with a dependent personality disorder because Speed "hasn't exuded any of those qualities." Although the jailer was not an expert, "after narrating the facts and circumstances upon which his testimony is based, a nonexpert witness may express his opinion as to the state of mind or mental condition of another."[52] We find no error.

38. Besides the jailer, Speed presented his teacher at the jail, who also testified that Speed was a quiet, nonviolent inmate who did not cause problems. The state presented four rebuttal witnesses, all jailers, who testified about several disruptive incidents, including a fight, that Speed had been involved in awaiting trial. Speed complains that the state did not provide notice of these witnesses under

---

[47] *Pye v. State*, 269 Ga. 779, 788 (18) (505 SE2d 4) (1998).

[48] *Barnes*, 269 Ga. at 359-360 (27).

[49] Id.

[50] See OCGA § 24-9-64; *Carswell v. State*, 268 Ga. 531, 535 (5) (491 SE2d 343) (1997).

[51] See *Givens*, 264 Ga. at 523 (2).

[52] *O'Kelley v. State*, 175 Ga. App. 503, 507 (3) (333 SE2d 838) (1985); see also *Peebles v. State*, 260 Ga. 430, 432-433 (3) (396 SE2d 229) (1990).

OCGA § 17-10-2 (a), but Speed's cross-examination of the rebuttal witnesses shows that his lawyer was aware of these witnesses and the incidents about which they testified. Since the four witnesses were presented as rebuttal witnesses, and Speed had some notice of their testimony, we find no error.[53]

39. The state's sentencing phase closing argument was not improper.

40. The trial court did not err by sending a written copy of the alleged statutory aggravating circumstances out with the jury during its deliberations, as required by OCGA § 17-10-30 (c).[54]

41. The sentencing phase verdict form was not error. The trial court properly declined to use Speed's requested verdict form because it included the option of deadlock.[55]

## JURY CHARGE

42. During the charge conference, the trial court agreed to give Speed's penalty phase request to charge number 21, which listed the circumstances under which the police can make a warrantless arrest. Speed contended that the (b) (10) aggravating circumstance did not apply because Officer Johantgen was not making a lawful arrest. Instead, Speed argued that the officer was acting outside the scope of his official duties when he detained and frisked one of the men in the parking lot.

After closing arguments in the penalty phase, the trial judge had to leave town due to a family member's serious illness. The following day, a substitute judge gave the court's charge to the jury and presided over the deliberations. After the charge was completed, the substitute judge pointed out to the parties that he had not given Speed's request to charge number 21 because the original trial judge had left word that he had not meant to give that charge. Speed announced that he reserved all objections to the charge for the motion for new trial.

On appeal, Speed complains that the failure of the trial court to give the agreed charge was reversible error because he made his argument anticipating that the charge would be given and the failure to do so impaired his closing argument. We disagree. First, the trial court was not required to give Speed's request to charge number 21. The charge as given on the statutory aggravating circumstances tracked the language of the recommended charge in the pattern jury

---

[53] See *Hill v. State*, 263 Ga. 37, 44 (15) (427 SE2d 770) (1993).
[54] See *Collier v. State*, 244 Ga. 553, 569 (13) (261 SE2d 364) (1979), overruled on other grounds *Thompson v. State*, 263 Ga. 23, 25-26 (2) (426 SE2d 895) (1993).
[55] See *Burgess v. State*, 264 Ga. 777, 789 (35) (450 SE2d 680) (1994).

instructions,[56] and we have never required a trial court to go beyond the pattern charge. Second, if Speed was misled about the charge during his closing argument, it was incumbent upon him to request to reargue. His failure to do so waives this issue on appeal.[57] We further conclude that Speed can show no harm resulting from the substitution of the trial judges.[58]

43. The trial court's guilt-innocence phase jury charge was not improper. Speed claims that the trial court erred by refusing to give several of his requested charges, but they were either already covered by the charge or not supported by the evidence. The trial court correctly denied Speed's requested "two theories" charge.[59]

44. The trial court's penalty phase charge on the two statutory aggravating circumstances was not improper.

45. The trial court's sentencing phase jury charge was not improper. Speed's requests to charge that the trial court denied were either already covered by the charge or were inaccurate statements of the law. The trial court is not required in its charge to identify or enumerate mitigating circumstances for the jury,[60] nor is the trial court required to charge the jury on the consequences of a deadlock.[61]

46. The trial court did not err in failing to charge the jury in the sentencing phase on a burden of proof for non-statutory aggravating circumstances.[62]

## PRE-TRIAL ISSUES

47. The indictment was valid.

48. OCGA § 16-5-1, the murder statute, and § 17-10-30, which authorizes a death sentence for murder, are not unconstitutional.

49. Because Speed failed to prove purposeful racial discrimination in the state's intent to seek the death penalty in his case, the trial court did not err by denying his motion to preclude the state from seeking the death penalty.[63]

50. Speed's equal protection claim regarding the race and gender

---

[56] Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II, pp. 83 and 86 (1991).

[57] See *Hall v. State*, 259 Ga. 243, 245 (4) (378 SE2d 860) (1989), overruled on other grounds *Heard v. State*, 261 Ga. 262, 263 (3) (403 SE2d 438) (1991); *Williams v. State*, 176 Ga. App. 503, 505 (1) (336 SE2d 367) (1985); see also *Goins v. State*, 177 Ga. App. 536, 536-537 (1) (339 SE2d 790) (1986) (reversible error despite failure to request a re-argument when trial court did not give a charge it was *required* to give).

[58] See *McIntyre v. State*, 266 Ga. 7, 8-9 (2) (463 SE2d 476) (1995).

[59] See *Jones v. State*, 213 Ga. App. 11, 13 (3) (444 SE2d 89) (1994).

[60] *Burgess*, 264 Ga. at 791 (36).

[61] Id. at 789 (35).

[62] *McClain v. State*, 267 Ga. 378, 387 (8) (477 SE2d 814) (1996).

[63] See *Rower v. State*, 264 Ga. 323, 323 (1) (443 SE2d 839) (1994).

of the Fulton County grand jury foreperson is without merit. The record shows that the Fulton County grand jury elects its foreperson without input or assistance from the state.[64]

51. The trial court did not err in its rulings on Speed's discovery motions.

52. The trial court did not err by granting the state's motion in limine, which prevented Speed from referring to "unrelated homicides" without first showing that these homicides were relevant to Speed's case.

53. Speed complains that *Brady v. Maryland*[65] was violated because the trial court permitted the state to withhold favorable evidence during discovery. More than a year after Officer Johantgen's murder, several Atlanta area police officers, including two officers who worked in the same zone as Officer Johantgen, were arrested for committing crimes such as burglary and armed robbery.[66] Speed sought the personnel and investigative files of these officers, speculating that Officer Johantgen may have been involved in the crime ring and therefore may not have been acting in the performance of his official duties when he was murdered. Speed, however, fails to show that there was any link between the information sought and the circumstances of Officer Johantgen's murder or that the state withheld any exculpatory or favorable evidence.[67] We therefore conclude that this enumeration is without merit.

## OTHER ISSUES

54. The trial court did not err by denying Speed's motion for recusal of the trial judge due mainly to the judge's previous employment as an Atlanta police officer, investigator for the district attorney's office, and assistant district attorney. The trial court correctly determined, pursuant to Uniform Superior Court Rule 25, that a reasonable person would not conclude, assuming the truth of all alleged facts, that the judge harbored a bias stemming from an extrajudicial source, which is of such a nature and intensity that it would impede the exercise of impartial judgment.[68]

55. Shortly after the conclusion of Speed's trial, the trial judge's law clerk learned of a vacancy in the criminal division of the Attorney General's office. The law clerk applied for the position and submitted several criminal law writing samples, including memoranda

---

[64] See *Spivey v. State*, 253 Ga. 187, 199-200 (7) (b) (319 SE2d 420) (1984).

[65] 373 U.S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[66] See *Morrill v. State*, 216 Ga. App. 468 (454 SE2d 796) (1995).

[67] See *Burgeson v. State*, 267 Ga. 102, 104 (2) (475 SE2d 580) (1996).

[68] See *Wellons v. State*, 266 Ga. 77, 88 (18) (463 SE2d 868) (1995).

drafted to assist the trial judge during Speed's trial. The trial judge was not aware that his law clerk had applied for this position. When the assistant attorney general responsible for hiring realized that some of the writing samples involved an on-going capital case in which the Attorney General would represent the state on appeal, she informed the parties and the trial judge of what had occurred, returned the writing samples, and insulated the rest of the criminal division from exposure to them. The law clerk withdrew his application with the Attorney General's office, and the trial judge ended the law clerk's assistance with Speed's case. Speed subsequently filed a motion to recuse the trial judge from further participation in the post-trial proceedings and moved for a mistrial on this ground.

An independent judge presided over a hearing on this issue. He determined, after reading the writing samples and hearing testimony from the trial judge and the law clerk, that the memoranda contain "little or no original comment from the law clerk" and consist mostly of down-loaded verbatim material from the Michie Company's "Georgia Law on Disk," available to any legal researcher. He concluded that the state gained no advantage from the disclosure of the memoranda and that no reasonable person would find an appearance of impropriety warranting the recusal of the trial judge.[69] Upon review of the record, we agree.

56. Speed's death sentence was not imposed as the result of impermissible passion, prejudice, or other arbitrary factor.[70] The death sentence is also not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.[71] The similar cases listed in the appendix support the imposition of the death penalty in this case, in that all involve the deliberate killing of a police officer in the performance of his official duties, and thus show the willingness of juries to impose the death penalty under these circumstances.

*Judgment affirmed. All the Justices concur.*

APPENDIX.

*Henry v. State*, 269 Ga. 851 (507 SE2d 419) (1998); *Davis v. State*, 263 Ga. 5 (426 SE2d 844) (1993); *Hill v. State*, 250 Ga. 277 (295 SE2d 518) (1982); *Wallace v. State*, 248 Ga. 255 (282 SE2d 325) (1981); *Stevens v. State*, 247 Ga. 698 (278 SE2d 398) (1981); *McClesky v. State*, 245 Ga. 108 (263 SE2d 146) (1980); *Collier v. State*, 244 Ga. 553 (261 SE2d 364) (1979).

---

[69] See id.; Code of Judicial Conduct, Canons 2 and 3.
[70] OCGA § 17-10-35 (c) (1).
[71] OCGA § 17-10-35 (c) (3).

DECIDED MARCH 1, 1999 —
RECONSIDERATION DENIED MARCH 19, 1999.

*Michael Mears, James C. Bonner, Jr.,* for appellant.
*Paul L. Howard, District Attorney, Bettieanne C. Hart, Peggy A. Katz, David E. Langford, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige Reese Whitaker, Assistant Attorney General,* for appellee.