## S00P1316. JONES v. THE STATE.
(539 SE2d 154)

SEARS, Justice.

Brandon Astor Jones, also known as Wilbur May, was convicted of murder and sentenced to die in 1979.[1] In 1989, his death sentence was vacated by a federal district court.[2] A re-sentencing trial was held in 1997 and the jury recommended a death sentence after finding beyond a reasonable doubt that Jones committed the offense of murder while engaged in the commission of armed robbery and burglary and that the murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture to the victim before death.[3] This is Jones's appeal from the re-sentencing verdict.[4] At the outset, we note that in this appeal Jones does not raise an Eighth Amendment challenge to the method of execution, electrocution, that has been imposed against him. For the reasons that follow, we affirm.

1. Viewing the evidence in the light most favorable to the prosecution, the evidence showed that the victim, Roger Tackett, was the manager of a Tenneco convenience store. On June 16, 1979, he arrived at the store at 11:20 p.m. to close it for the night. After the other employees left, Tackett remained at the store to complete some paperwork. At approximately 1:45 a.m., Officer Kendall of the Cobb County police department drove a stranded motorist to the Tenneco parking lot so she could use a pay phone. Officer Kendall observed a car (Tackett's) parked in front of the store with the driver's-side door open; the lights were also still on inside the store. Since the Tenneco store was in his regular patrol area, Officer Kendall knew that it usually closed at midnight. Suspicious, he walked to the store and saw through the front window Brandon Jones stick his head out of the storeroom door at the back of the store, look around (apparently

---

[1] *Jones v. State,* 249 Ga. 605 (293 SE2d 708) (1982).

[2] *Jones v. Kemp,* 706 FSupp. 1534 (N.D. Ga. 1989).

[3] OCGA § 17-10-30 (b) (2), (7).

[4] The murder occurred on June 17, 1979. Jones was indicted for malice murder on July 16, 1979. After the vacation of his death sentence in 1989, Jones appealed the denial of a plea in bar, *Jones v. State,* 260 Ga. 794 (401 SE2d 1) (1991), and sought an interim review, *Jones v. State,* 263 Ga. 904 (440 SE2d 161) (1994). The re-sentencing trial took place from September 8 to 23, 1997. Jones filed a motion for new trial on October 10, 1997, and amended it on June 9, 1999. The trial court denied the motion for new trial on January 11, 2000, and the case was docketed to this Court on April 21, 2000. Oral argument was on July 18, 2000.

without seeing the officer), and then close the storeroom door. Officer Kendall entered through the unlocked front door and heard three shots, a pause, and then a fourth shot. He drew his weapon and after shouting "police, come on out" without a response, approached the storeroom door and opened it. Jones and his co-defendant, Van Roosevelt Solomon, were standing just inside the door. Officer Kendall ordered them into the main store area, where he searched them and handcuffed Jones. He placed Solomon in his patrol car since he only had one set of handcuffs, and called for assistance on the radio. He also informed both defendants of their rights under *Miranda v. Arizona*.[5]

A private security officer, Alex Woolyard, heard Officer Kendall's request for assistance on a police scanner and arrived first. He loaned Officer Kendall a set of handcuffs to restrain Solomon and watched the defendants while Officer Kendall investigated a van parked nearby. During this time, Woolyard spoke with Jones and determined that the car parked in front of the store did not belong to them; they had arrived in the van. Upon continued questioning by Woolyard, Jones stated that they had come to burglarize the store and found a man who was "bad hurt" in the back of the store. After handcuffing Jones to a metal pole, Woolyard and Officer Kendall entered the store and discovered that the storeroom door had locked when it shut as the defendants exited. They used a crowbar to break open the door and they found Tackett's body lying face-down at one end of the narrow storeroom (Officer Kendall had not seen the victim when he first encountered the defendants in the storeroom since he did not enter the storeroom at that time). Tackett had been shot five times from behind, once in the jaw, once behind the left ear, once in the thumb, and twice in the right hip. The medical examiner determined that the fatal shot was the "loose contact" shot behind the left ear since that bullet penetrated the brain; this shot was probably the final shot and was fired while the victim was lying on the ground. Two .38 caliber revolvers were found in an open box next to where Officer Kendall had first encountered the defendants. A large Smith and Wesson contained two spent shells; a smaller Colt contained four spent shells. Four .38 caliber bullets were recovered at the scene or in the victim's body; the ballistics expert determined that all were probably fired by the Colt. Crime scene photographs also show a possible bullet hole in a shelf on the wall, indicating a fifth shot may have been fired in the storeroom. An atomic absorption test conducted on swabs of the defendants' hands indicated that both men had recently fired a gun or handled a recently-fired gun. The store's cash drawer

---

[5] 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

was found moved from its original place inside the store and wrapped in a plastic bag. Inside the van, which belonged to Solomon, the police discovered burglary tools, holsters that fit the revolvers and .38 caliber bullets.

We find that the evidence adduced at Jones's re-sentencing trial was sufficient to enable any rational trier of fact to find the existence of the statutory aggravating circumstances beyond a reasonable doubt.[6]

2. Jones claims that sentencing him to death after two decades on death row is an affront to human dignity. This "waiting for execution is intolerably cruel" argument is without merit.[7] To the extent that Jones also makes a speedy trial claim with regard to the eight-year delay in bringing him to trial after his sentence was vacated, that claim fails for three reasons.[8] First, there is no evidence that Jones asserted his right to a speedy trial before trial.[9] Second, much of the delay is attributable to Jones's actions in that he frequently refused to cooperate with his appointed counsel and repeatedly sought to have them replaced, and that he appealed the denial of a plea in bar and sought a separate interim review, each requiring considerable time to litigate.[10] In addition, one of the superior court judges assigned to the case was appointed to this Court, and two others recused themselves on defense motions, one because she had years earlier worked on Jones's case as an assistant district attorney and one because she had a sister in the district attorney's office. This resulted in a delay that cannot be fairly attributed to the prosecution. Third, Jones fails to show how he was prejudiced by the delay since his murder conviction was unaffected by the federal courts and he was, in any event, required to serve at least a life sentence.[11] There is no evidence that his defense was impaired; in fact, several of his mitigation witnesses testified that they did not become acquainted with Jones until they read articles he had written in the mid-1990s. We therefore find no speedy trial violation. There is also no evidence to support Jones's assertion that his jury was aware that he had previously been sentenced to death.

3. During deliberations, the jury sent a note to the trial court asking, "Is a life sentence considered life without parole or will parole be considered?" The trial court responded that this "is not a question

[6] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also OCGA § 17-10-35 (c) (2).

[7] *Potts v. State,* 259 Ga. 96 (35) (376 SE2d 851) (1989).

[8] See *Barker v. Wingo,* 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972); *Boseman v. State,* 263 Ga. 730 (438 SE2d 626) (1994).

[9] *Boseman,* supra at 733.

[10] Id. at 732-733; *Jones,* 263 Ga. 904; *Jones,* 260 Ga. 794.

[11] See *Boseman,* supra at 733-734.

for your deliberations."[12] This response was not error.[13]

4. Jones claims that the prosecutor erred by commenting on Jones's right to remain silent when he argued Jones's lack of remorse during closing argument. However, it is not improper to argue the defendant's lack of remorse in the penalty phase, nor do such comments amount to an improper reference to a defendant's failure to testify.[14] Several of Jones's mitigation witnesses testified about his numerous articles published in magazines and on the Internet and their frequent correspondence with him, but the prosecutor pointed out that none had mentioned any expression of remorse by Jones. Further, it is not improper for the prosecutor to urge that mercy is not appropriate in the case at hand,[15] or to argue Jones's future dangerousness.[16] The argument that Jones's autopsy expert's conclusions may have been affected by her failure to utilize the original Polaroid photographs of the autopsy was a reasonable inference.[17] We therefore find no error in the State's closing argument or any prosecutorial misconduct. We also find no error in the victim-impact evidence presented by the State or in the cross-examination questions posed to Jones's mitigation witnesses.[18] There was no reversible error due to the victim's daughter identifying a photograph of the victim in life since Jones did not object and there was no emotional display.[19]

5. After the jury had been deliberating about ten hours, they sent a note to the trial judge stating that they were at an "impasse," that the vote was 11-1 for a death sentence, and that "one juror is opposed to the death penalty under any circumstances." Although the trial court learned of the nature of the split, there is no error since the jury volunteered this information without prompting by the judge.[20] The trial court gave a modified *Allen*[21] charge and the jury returned with a death sentence three hours later and was polled as to its verdict. Jones asserts that the trial court should have declared a

---

[12] Life without parole was not a sentencing option because the murder occurred in 1979 and Jones did not request that this sentencing option apply to his case. *McMichen v. State*, 265 Ga. 598 (21) (458 SE2d 833) (1995).

[13] See *Potts v. State*, 261 Ga. 716 (24) (410 SE2d 89) (1991); *Quick v. State*, 256 Ga. 780 (9) (353 SE2d 497) (1987).

[14] *Hammond v. State*, 264 Ga. 879 (8) (b) (452 SE2d 745) (1995); *Sears v. State*, 262 Ga. 805 (7) (426 SE2d 553) (1993).

[15] *Johnson v. State*, 271 Ga. 375 (15) (b) (519 SE2d 221) (1999).

[16] *Pye v. State*, 269 Ga. 779 (19) (505 SE2d 4) (1998); *McClain v. State*, 267 Ga. 378 (3) (a) (477 SE2d 814) (1997).

[17] See *Whatley v. State*, 270 Ga. 296 (15) (a) (509 SE2d 45) (1998); *Morgan v. State*, 267 Ga. 203 (1) (476 SE2d 747) (1996).

[18] *Pickren v. State*, 269 Ga. 453 (1) (500 SE2d 566) (1998); OCGA §§ 24-9-64; 24-9-68.

[19] *Ledford v. State*, 264 Ga. 60 (14) (439 SE2d 917) (1994).

[20] *Sears v. State*, 270 Ga. 834 (1), n. 1 (514 SE2d 426) (1999).

[21] *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896). See also *Romine v. State*, 256 Ga. 521 (1) (d) (350 SE2d 446) (1986).

mistrial when the jury announced its impasse, and that the charge was coercive. However, a trial court does not err by requiring a jury to continue deliberating under these circumstances; it is not required to accept a jury's declaration of deadlock.[22] The modified *Allen* charge was not improper and the three hours from the charge to the verdict further indicates a lack of coercion.[23] The trial court was also not required to single out the holdout juror for additional questions during the polling of the jury or inform the jury during its charge of the consequences of a deadlock.[24] We find that the jury's verdict was not coerced.

6. During its deliberations, the jury sent a note to the trial court stating, "Please define: Intended that deadly force be used by another to accomplish the criminal enterprise." After discussion with both parties, the trial court responded to the note by telling the jury they had the complete written charge before them and that no additional explanation would be given. Jones specifically stated that he had no objection to this response, thereby waiving his claim on appeal that the trial court committed error in this instance.[25]

7. When the jury returned its verdict, the trial court discovered a scrivener's error with one of the statutory aggravating circumstances and, without commenting on the verdict itself, sent the jury back out to complete the form. Jones did not object to the form of the verdict or to the trial court's handling of the scrivener's error so any argument regarding an alleged invalid verdict form is waived.[26] Moreover, it is not improper for the trial court to send a jury back out to correct errors on the verdict form.[27] The statutory aggravating circumstances submitted by the State were not improper, and the statutory aggravating circumstances found by the jury were not mutually supporting.[28]

8. Jones claims that his 1978 robbery conviction in Chicago admitted as non-statutory aggravating evidence was invalid because he had received ineffective assistance of counsel and he had not properly waived his right to a jury before the 1978 bench trial. There is no evidence that Jones's counsel in 1978 was ineffective. The record of conviction also contains Jones's written waiver of a jury as well as the transcript of the colloquy with the judge in which Jones waived a jury in the presence of his counsel. Jones's 1978 conviction was valid

---

[22] *Sears*, supra; *Todd v. State*, 243 Ga. 539 (3) (255 SE2d 5) (1979).

[23] *Sears*, supra.

[24] *Jenkins v. State*, 269 Ga. 282 (26) (498 SE2d 502) (1998); *Hudson v. State*, 237 Ga. 241 (3) (227 SE2d 257) (1976).

[25] *Pye*, 269 Ga. at 787 (14); *Earnest v. State*, 262 Ga. 494 (1) (422 SE2d 188) (1992).

[26] Id.

[27] See *Cofield v. State*, 247 Ga. 98 (10) (274 SE2d 530) (1981).

[28] See *Jenkins v. State*, 269 Ga. 282 (23) (498 SE2d 502) (1998).

and properly admitted.

9. Jones sought to introduce a certified copy of his co-defendant Solomon's conviction for the malice murder of Tackett, but the State objected and the trial court sustained the objection. We find no error with this ruling, since Solomon's conviction would not tend to lessen Jones's culpability for the murder, nor would it constitute mitigating evidence pertaining to Jones's "character, prior record, or the circumstances of the offense."[29] The jury was informed of Solomon's role in the murder (to the extent possible since only Jones, Solomon, and the victim were in the storeroom) through the testimony of the witnesses. A certified copy of Solomon's 1960 armed robbery conviction was properly excluded by the trial court for the same reasons. An unsworn letter written by a person who did not appear at trial asking for mercy for Jones was inadmissible hearsay.[30]

10. Jones complains that five prospective jurors were erroneously excused for cause due to their opposition to the death penalty.[31] The record shows that all of these prospective jurors stated unequivocally that they could not vote to impose a death sentence regardless of the evidence. The trial court therefore did not err by excusing them for cause.[32]

11. The trial court did not err by refusing to excuse for cause a prospective juror who said that he believed in an eye for an eye and that he was leaning to a death sentence.[33] This juror also stated that he could fairly consider both life and death as possible sentences, that his mind was not made up with regard to punishment, and that he would have to hear the evidence before deciding the sentence.[34]

12. Jones claims that the atomic absorption test performed on Jones's hands was scientifically unreliable. At a pretrial hearing and again at trial, the chemist who performed the test, after being properly qualified as an expert by the trial court, testified about the procedures and the result of the test, which is used to detect trace elements of metals found in gunshot residue. The witness was fully subject to cross-examination by Jones regarding this test and its reliability, and Jones did not present evidence that this test was considered to be unreliable by other experts. The atomic absorption test has been widely used by the Crime Lab since 1975 and we conclude that

---

[29] *Jenkins v. State*, 268 Ga. 468 (4) (491 SE2d 54) (1997). See also *Barnes v. State*, 269 Ga. 345 (27) (496 SE2d 674) (1998).

[30] *Davis v. State*, 263 Ga. 5 (14) (426 SE2d 844) (1993).

[31] See *Wainwright v. Witt*, 469 U. S. 412, 424 (II) (105 SC 844, 83 LE2d 841) (1985); *Greene v. State*, 268 Ga. 47, 48 (485 SE2d 741) (1997).

[32] *Greene*, supra at 48-50.

[33] *Wainwright*, supra; *Greene*, supra; *Mize v. State*, 269 Ga. 646 (6) (d) (501 SE2d 219) (1998).

[34] See *Mize*, supra.

its admission in this case was not error.[35]

13. Jones's claim of racism in the seeking of the death penalty in his case has already been found to be without merit on interim review.[36]

14. Jones claims that the selection of a white jury foreperson was the result of a discriminatory procedure, in that the jury was instructed to select a foreperson from among themselves, races tend to block-vote, and whites were a majority of the jury. Because Jones did not object to the trial court's instruction on selecting a jury foreperson, this argument is waived on appeal.[37] Further, there is no state action in the selection of the jury foreperson since the jurors select the foreperson by themselves.[38] We find no error.

15. We conclude that the wooden trim in the courtroom, which was patterned on a cross motif, was not prejudicial to the defendant.

16. The trial court did not err by failing to give a charge on the voluntariness of Jones's statements to Alex Woolyard since Jones did not request such a charge.[39] The admissibility of Jones's statements was determined before trial.[40]

17. Georgia does not recognize the cumulative error rule.[41]

18. Jones's death sentence was not imposed as the result of impermissible passion, prejudice or other arbitrary factor.[42] The death sentence is also not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.[43] We note that two juries have recommended that Jones receive the death penalty for Tackett's murder, and that his co-defendant was also sentenced to death for the same murder.[44] The similar cases listed in the Appendix support the imposition of the death penalty in this case, in that all involve a murder during the commission of an armed robbery or burglary.

*Judgment affirmed. Benham, C. J., Carley and Thompson, JJ., concur; Fletcher, P. J., Hunstein, J., and Judge Perry Brannen, Jr., dissent; Hines, J., disqualified.*

FLETCHER, Presiding Justice, dissenting.

I respectfully dissent to division 4 of the majority opinion and to

---

[35] See *Whatley*, 270 Ga. at 299 (6); *Harper v. State*, 249 Ga. 519 (1) (292 SE2d 389) (1982).

[36] *Jones*, 263 Ga. at 905 (3), (4).

[37] *Pye*, 269 Ga. at 787 (14); *Earnest*, 262 Ga. at 495 (1).

[38] See *Speed v. State*, 270 Ga. 688, 698-699 (50) (512 SE2d 896) (1999).

[39] *Hawes v. State*, 261 Ga. 164 (3) (402 SE2d 714) (1991).

[40] *Jones*, 263 Ga. at 906 (6) (b).

[41] *Jenkins*, 268 Ga. at 471 (3).

[42] OCGA § 17-10-35 (c) (1).

[43] OCGA § 17-10-35 (c) (3).

[44] *Solomon v. State*, 247 Ga. 27 (277 SE2d 1) (1981).

the imposition of the death penalty.

During closing argument, the state argued that Jones's failure to apologize to Roger Tackett's family was "the kind of conduct that deserves the death penalty." The impermissible inference from this argument was that Jones had a moral and legal obligation to confess to the murder by apologizing to the victim's family in order to avoid the death penalty.[45] This type of argument is fundamentally unfair because "[e]ven after he has been found guilty, a defendant is under no obligation to confess, and he has a right to urge his possible innocence to the jury as a factor in mitigation of penalty."[46] "Acceptance of the [s]tate's argument would place an accused in the paradoxical position of saying I am sorry for a crime of which I am not guilty."[47] The state's argument in this case forced Jones into an "intolerable dilemma"[48] of having to choose between his Fifth Amendment right against self-incrimination and a sentence of death.

I acknowledge that this Court has held that it is permissible for the state to argue the defendant's lack of remorse in certain circumstances when there is lawful evidence to support the argument.[49] Here, there is no specific evidence of lack of remorse. We have never held that the defendant's failure to apologize and confess is lawful evidence of a lack of remorse or that such failure permits the state to argue that a lack of remorse supports the imposition of the death penalty. Furthermore, the majority's reliance on *Hammond v. State*,[50] is misplaced. *Hammond* addressed only the specific comment made by the prosecutor in that case and does not stand for the general proposition that arguments regarding a lack of remorse can never constitute a comment on the failure to testify.

The impropriety of the state's argument was compounded by its contention that the power of forgiveness belonged exclusively to Roger Tackett's family members, and that Jones had not sought this forgiveness by apologizing for the murder. A logical but impermissible inference for the jury to draw was that it had no power to dispense mercy to Jones, contrary to OCGA § 17-10-2 (c), which provides, in pertinent part, that at the conclusion of the penalty phase, "the jury shall retire to determine . . . whether to recommend mercy for the defendant." Furthermore, "mercy for the individual defendant

---

[45] *Lesko v. Lehman*, 925 F.2d 1527, 1544 (3rd Cir. 1991).
[46] *People v. Coleman*, 459 P.2d 248, 254 (Cal. 1969), overruled on other grounds, *Garcia v. Superior Court*, 928 P.2d 572 (Cal. 1997).
[47] *Owen v. Texas*, 656 SW2d 458, 460 (Tex. 1983).
[48] Id. at 460.
[49] *Fair v. State*, 245 Ga. 868, 873 (268 SE2d 316) (1980) (when defendant admits guilt); *Isaacs v. State*, 259 Ga. 717, 723 (386 SE2d 316) (1989) (when defendant says he would commit crime again).
[50] 264 Ga. 879, 886 (452 SE2d 745) (1995).

is, by itself, a valid reason for a jury to decline to impose a death sentence – a jury can withhold the death penalty for any reason or no reason at all."[51]

Because the state's argument violated Jones's Fifth Amendment right against self-incrimination, and was so fundamentally unfair as to deny Jones due process,[52] I would reverse and remand for a new sentencing hearing.

I am authorized to state that Justice Hunstein and Judge Perry Brannen, Jr., join in this dissent.

APPENDIX.

*Cromartie v. State*, 270 Ga. 780 (514 SE2d 205) (1999); *Whatley v. State*, 270 Ga. 296 (509 SE2d 45) (1998); *Bishop v. State*, 268 Ga. 286 (486 SE2d 887) (1997); *Jones v. State*, 267 Ga. 592 (481 SE2d 821) (1997); *McClain v. State*, 267 Ga. 378 (477 SE2d 814) (1996); *Greene v. State*, 266 Ga. 439 (469 SE2d 129) (1996); *Mobley v. State*, 265 Ga. 292 (455 SE2d 61) (1995); *Meders v. State*, 261 Ga. 806 (411 SE2d 491) (1992); *Gibson v. State*, 261 Ga. 313 (404 SE2d 781) (1991); *Ferrell v. State*, 261 Ga. 115 (401 SE2d 741) (1991); *Stripling v. State*, 261 Ga. 1 (401 SE2d 500) (1991); *Lee v. State*, 258 Ga. 82 (365 SE2d 99) (1988); *Ford v. State*, 257 Ga. 461 (360 SE2d 258) (1987); *Cargill v. State*, 255 Ga. 616 (340 SE2d 891) (1986); *Ingram v. State*, 253 Ga. 622 (323 SE2d 801) (1984); *Spivey v. State*, 253 Ga. 187 (319 SE2d 420) (1984); *Mincey v. State*, 251 Ga. 255 (304 SE2d 882) (1983); *Wilson v. State*, 250 Ga. 630 (300 SE2d 640) (1983); *Solomon v. State*, 247 Ga. 27 (277 SE2d 1) (1981).

DECIDED NOVEMBER 20, 2000 —
RECONSIDERATION DENIED DECEMBER 14, 2000.

*Albertelli & Israel, Kenneth T. Israel, Ray B. Gary, Jr., Mitchell D. Durham, Clive A. Stafford-Smith*, for appellant.

*Patrick H. Head, District Attorney, Maria B. Golick, Russell J. Parker, Thomas A. Cole, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General*, for appellee.

---

[51] *Barnes v. State*, 269 Ga. 345, 359 (496 SE2d 674) (1998); OCGA § 17-10-2 (c).
[52] *Presnell v. Zant*, 959 F.2d 1524, 1528 (11th Cir. 1992).